# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Aspire Commodities L.P. and Raiden Commodities L.P., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:14-cv-01111 |
| GDF SUEZ Energy North America, Inc.; Ennis Power Company, LLC; Wise County Power Company, LLC; Midlothian Energy, LLC; Hays Energy, LLC; Wharton County Generation, LLC; and Coleto Power, LP, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND BRIEF IN SUPPORT

BRACEWELL & GIULIANI LLP
Stephen B. Crain
Attorney-In-Charge
State Bar No. 04994580
Federal Bar No. 12499
stephen.crain@bgllp.com

Tony L. Visage
State Bar No. 00788587
Federal Bar No. 17248
tony.visage@bgllp.com

Amy E. Parker
State Bar No. 24051156
Federal Bar No. 626178
amy.parker@bgllp.com

J. Erick Sandlin
State Bar No. 24056265
Federal Bar No. 872070
erick.sandlin@bgllp.com

#4614438.1

Leslie D. Wilson
State Bar No. 24084109
Federal Bar No. 1708460
leslie.wilson@bgllp.com

711 Louisiana Street, Suite 2300
Houston, Texas 77002-2781
(713) 223-2300 Telephone
(713) 221-1212 Facsimile

COUNSEL FOR DEFENDANTS GDF
SUEZ ENERGY NORTH AMERICA,
INC.; ENNIS POWER COMPANY, LLC;
WISE COUNTY POWER COMPANY,
LLC; MIDLOTHIAN ENERGY, LLC;
HAYS ENERGY, LLC; WHARTON
COUNTY GENERATION, LLC; AND
COLETO POWER, LP

**TABLE OF CONTENTS**

I.     BACKGROUND AND SUMMARY ..................................................................1

       A.    THE ERCOT MARKET ................................................................2

       B.    DEFICIENCIES OF THE COMPLAINT ............................................3

II.    STATEMENT OF ISSUES ...........................................................................4

       A.    THERE IS NO PRIVATE RIGHT OF ACTION THAT PLAINTIFFS
             CAN PURSUE UNDER THE COMMODITY EXCHANGE ACT .....................4

       B.    PLAINTIFFS LACK STANDING TO PURSUE THE CAUSES OF
             ACTION ASSERTED ..............................................................4

       C.    PLAINTIFFS' CLAIMS ARE PRECLUDED BY THE "FILED RATE
             DOCTRINE" ......................................................................4

       D.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF
             CAN BE GRANTED ................................................................5

III.   NATURE AND STAGE OF PROCEEDING ....................................................5

IV.    STANDARDS APPLICABLE TO RULE 12 MOTIONS .................................6

       A.    RULE 12(b)(1) STANDARD .......................................................6

       B.    RULE 12(b)(6) STANDARD .......................................................6

V.     MOTION TO DISMISS ...............................................................................7

       A.    THERE IS NO PRIVATE RIGHT OF ACTION THAT PLAINTIFFS
             CAN PURSUE UNDER THE COMMODITY EXCHANGE ACT .....................7

       B.    PLAINTIFFS LACK STANDING TO PURSUE THE CAUSES OF
             ACTION ASSERTED ..............................................................9

             1.    Plaintiffs Lack Standing to Pursue a Private Right of Action under
                   CEA Sections 6(c)(1), (2), or (3) ...............................................9

             2.    Plaintiffs Lack Standing to Pursue a Private Right of Action for
                   Conduct Proscribed by CEA Section 6(c)(2) ...............................10

             3.    Plaintiffs Lack Standing to Seek Injunctive Relief ......................11

             4.    Plaintiffs Lack Standing to Seek Declaratory Relief ...................12

C.      PLAINTIFFS' CLAIMS ARE PRECLUDED BY THE "FILED RATE DOCTRINE" ................................................................................13

D.      PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ............................................................................15

    1.    Allegations that GDF SUEZ Traded on Nonpublic Information Do Not Constitute a Violation of the CEA ..................................15

    2.    Plaintiffs Fail to State a Claim for any Violation of the CEA Sounding in Fraud ....................................................................15

    3.    Plaintiffs Fail to State a Claim for Market Manipulation under CEA Section 22(a)(1)(D)(ii) ..............................................18

        a)    Plaintiffs Fail to Establish Defendants' Conduct Caused the Existence of an Artificial Price .......................................19

        b)    Plaintiffs Fail to Plead Specific Intent ...........................................20

    4.    Plaintiffs Fail To Plead Actual Damages...................................21

    5.    Plaintiffs Fail to Establish Aider and Abettor Liability under the CEA ....................................................................................23

VI.    CONCLUSION AND PRAYER FOR RELIEF ...............................................25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amacker v. Renaissance Asset Mgmt. LLC,*
    657 F.3d 252 (5th Cir. 2011) ...............................................................................24, 25

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................................6

*Bosco v. Serhant,*
    836 F.2d 271 (7th Cir. 1987) .....................................................................................24

*Cent. Bank of Denver, N.A. v. First Interstate Bank, N.A.,*
    511 U.S. 164 (1994) .................................................................................................11

*CFTC v. Enron Corp.,*
    No. H-03-909, 2004 WL 594752 (S.D. Tex. Mar. 10, 2004) .................................16

*CFTC v. Johnson,*
    408 F. Supp. 2d 259 (S.D. Tex. 2005) ..............................................................16, 25

*Chartis Specialty Ins. Co. v. Tesoro Corp.,*
    930 F. Supp. 2d 653 (W.D. Tex. 2013) .....................................................................6

*Chill v. Gen. Elec. Co.,*
    101 F.3d 263 (2d Cir. 1996) ......................................................................................20

*Damato v. Hermanson,*
    153 F.3d 464 (7th Cir. 1998) .....................................................................................24

*Grynberg v. BP P.L.C.,*
    855 F. Supp. 2d 625 (S.D. Tex. 2012) ......................................................................6

*Hershey v. Energy Partners, L.P.,*
    610 F.3d 239 (5th Cir. 2010) .......................................................................16, 18, 21, 23

*In re Amaranth Natural Gas Commodities Litig.,*
    587 F. Supp. 2d 513 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013) ...........16, 17, 24, 25

*In re Cannon v. J.C. Bradford & Co.,*
    230 B.R. 546 (Bankr. W.D. Tenn. 1999) ................................................................11

*In re Crude Oil Commodity Litig.,*
    No. 06-Civ-6677(NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ................17

*In re Energy Transfer Partners Natural Gas Litig.,*
    No 4:07-cv-3349, 2009 WL 2633781 (S.D. Tex. Aug. 26, 2009) ..................17, 18, 20, 22, 23

*In re LIBOR Antitrust Litig.*,
   962 F. Supp. 2d (S.D.N.Y. 2013)...............................................................20, 21, 22

*Jefferson v. Lead Indus. Ass'n, Inc.*,
   106 F.3d 1245 (5th Cir. 1997) ...............................................................................6

*Jones v. Alexander*,
   609 F.2d 778 (5th Cir. 1980) ...............................................................................12

*Keogh v. Chi. & N. W. Ry. Co.*,
   260 U.S. 156 (1922)...............................................................................................13

*Ladd v. Colonial Sav., F.A.*,
   No. 3:13-CV-1817-P, 2014 WL 1393038 (N.D. Tex. Apr. 10, 2014)....................13

*Louisville & Nashville R.R. Co. v. G. A. Maxwell*,
   237 U.S. 94 (1915).................................................................................................14

*M.R. Taffet v. S. Co.*,
   967 F.2d 1483 (11th Cir. 1992) (en banc) ............................................................15

*Marcus v. AT&T Corp.*,
   138 F.3d 46 (2d Cir. 1998)...............................................................................14, 15

*Merrill Lynch Futures Inc. v. Kelly*,
   No. 84 Civ. 2406-CSH, 1984 WL 217 (S.D.N.Y. Apr. 19, 1984)..........................12

*Mont.-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*,
   341 U.S. 246 (1951)...............................................................................................14

*Ping He (Hai Nam) Co. Ltd. v. NonFerrous Metals (U.S.A.) Inc.*,
   22 F. Supp. 2d 94 (S.D.N.Y. 1998)........................................................................22

*Pinter v. Dahl*,
   486 U.S. 622 (1988)...............................................................................................11

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) .................................................................................6

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)...................................................................................17

*Sanner v. Bd. of Trade*,
   62 F.3d 918 (7th Cir. 1995) ...................................................................................23

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
   365 F.3d 353 (5th Cir. 2004) .................................................................................18

*Tex. Comm. Energy v. TXU Energy, Inc.*,
　　413 F.3d 503 (5th Cir. 2005) ...................................................................13, 14, 15

*U.S. ex rel. Grubbs v. Kanneganti*,
　　565 F.3d 180 (5th Cir. 2009) ...............................................................................18

*U.S. ex rel. Steury v. Cardinal Health, Inc.*,
　　735 F.3d 202 (5th Cir. 2013) ...............................................................................18

*United States v. Radley*,
　　659 F. Supp. 2d 803 (S.D. Tex. 2009), *aff'd on other grounds*, 632 F.3d 177 (5th Cir.
　　2011) .............................................................................................................16, 19

*Util. Choice, L.P. v. TXU Corp.*,
　　No. Civ.A.H-05-573, 2005 WL 3307524 (S.D. Tex. Dec. 6, 2005).................................13, 14

*Utilimax.com, Inc. v. PPL Energy Plus, LLC*,
　　273 F. Supp. 2d 573 (E.D. Pa. 2003), *aff'd*, 378 F.3d 303 (3d Cir. 2004)............................15

*Volkart Bros., Inc. v. Freeman*,
　　311 F.2d 52 (5th Cir. 1962) ..................................................................................18

*Wegoland Ltd. v. NYNEX Corp.*,
　　27 F.3d 17 (2d Cir. 1994) .............................................................................13, 14, 15

*Weisskopf v. UJA-Fed'n, Inc.*,
　　889 F. Supp. 2d 912 (S.D. Tex. 2012) .......................................................................6

*Woodward v. Metro Bank of Dall.*,
　　522 F.2d 84 (5th Cir. 1975) ..................................................................................25

*Wright v. Brady*,
　　No. H-06-2021, 2006 WL 2371327 (S.D. Tex. Aug. 15, 2006) ..............................................6

## STATUTES

7 U.S.C. § 6............................................................................................................7

7 U.S.C. § 9...........................................................................................4, 9, 10, 11, 24

7 U.S.C. § 13..........................................................................................................12

7 U.S.C. § 25..................................................................................4, 10, 11, 16, 21, 24

15 U.S.C. § 78j.......................................................................................................11

28 U.S.C. § 1367.....................................................................................................12

18 U.S.C.S. § 2.......................................................................................................24

Tex. Util. Code Ann. §§ 15.021 (West Supp. 2007), 15.023 (West Supp. 2013), 39.157 (West Supp. 2013), and 39.356 (West Supp. 2007)..............................................................8, 9

**RULES**

Fed. R. Civ. P. 9(b) ...............................................................................................5, 16

Fed. R. Civ. P. 12(b) .........................................................................................6, 13, 15

**REGULATIONS**

P.U.C. Subst. R. § 25.504 ..........................................................................................5, 9

**OTHER AUTHORITIES**

Docket No. 41276, Order Approving Voluntary Mitigation Plan (Mar. 28, 2013)........................9

Docket No. 42424, Order Denying Petition for Rulemaking (June 20, 2014) ..............................5

Docket. No. 42424, Petition for Rulemaking (Apr. 21, 2014)........................................................5

Final Order in Response to a Petition to Exempt Specified Transactions from Certain Provisions of the Commodity Exchange Act, 78 Fed. Reg. 19,880 (Apr. 2, 2013) ...................................................................................7, 8

Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation, 76 Fed. Reg. 41,398 (July 14, 2011) (codified at 17 C.F.R. pt. 180) .....................................15

Proposed Order and Request for Public Comment, 77 Fed. Reg. 52,138 (Aug. 28, 2012).........................................................................................7

## I.  BACKGROUND AND SUMMARY

1.     Defendants are generators of electricity participating in the Electric Reliability Council of Texas ("ERCOT") electricity market regulated by the Public Utility Commission of Texas ("PUCT").[1]  Plaintiffs Aspire Commodities L.P. ("Aspire") and Raiden Commodities L.P. ("Raiden") (collectively, "Plaintiffs") appear from the Complaint to be speculators:  Raiden apparently speculating in ERCOT's virtual markets, and Aspire apparently speculating in derivatives markets such as the IntercontinentalExchange ("ICE").

2.     Plaintiffs allege that Defendants have engaged in a concerted scheme to manipulate the ERCOT real-time market in Texas in order to benefit a hypothetical derivatives position on a commodity futures market such as ICE. However, the truth is far less dramatic. The facts (even those alleged by Plaintiffs) demonstrate that GDF SUEZ offered to generate and sell electricity in the ERCOT real-time market pursuant to the rules, protocols, guides, policies, and procedures established by ERCOT (together "ERCOT Rules").  As Plaintiffs acknowledge, GDF SUEZ's conduct was in complete conformity with ERCOT Rules and was expressly authorized by the PUCT.  *See* Complaint at ¶¶ 12–14.  Plaintiffs' suggestion that GDF SUEZ may have improperly benefitted from nonpublic information about its own activities is without merit because the Commodity Exchange Act ("CEA") permits trading on lawfully obtained nonpublic information.

3.     Plaintiffs' allegations are an attempt to have this Court reject the design of the ERCOT wholesale power market in Texas and impose an obligation on ERCOT participants under the CEA that has never before been required by any court interpreting the reach of the

---

[1] Defendants are (1) GDF SUEZ Energy North America, Inc. ("GSENA") and (2) Ennis Power Company, LLC; Wise County Power Company, LLC; Midlothian Energy, LLC; Hays Energy, LLC; Wharton County Generation, LLC; and Coleto Power, LP (the "Generator Defendants," and  collectively with GSENA, "GDF SUEZ" or "Defendants").

CEA.  Specifically, Plaintiffs would have this Court impose on every merchant generator operating in the ERCOT market an obligation to limit all offers of electricity to prices no greater than their marginal costs even though ERCOT Rules expressly provide for offers to be well above their marginal costs.  *See* Complaint at ¶ 10 ("ERCOT has set a maximum LMP price of $5,000 per MWH.").  Such an obligation would be directly contrary to the market design in ERCOT.  The PUCT, as Plaintiffs admit, also has found that GDF SUEZ, as a generator with less than five percent (5%) of installed generating capacity in ERCOT, "cannot affect LMP prices through its supply or withholding of energy and cannot abuse market power by such withholding."  Complaint at ¶ 12.  As discussed below, Plaintiffs' allegations of physical withholding are bald assertions that lack any factual support and are insufficient as a matter of law.

4.       Plaintiffs' vague claim that Defendants' actions in ERCOT manipulated prices on ERCOT-related products in futures commodities markets such as ICE is misguided.  The prices of ERCOT-related products in the futures markets are derived from the prices for electricity established in ERCOT.  Plaintiffs do not allege any conduct on ICE, or in any other commodity markets outside ERCOT, that would cause ICE to have an artificial price.  Moreover, Plaintiffs admit that Defendants' activities and the resulting prices in ERCOT were sanctioned and approved by the authorities who regulate ERCOT.  Plaintiffs therefore cannot complain that lawfully obtained prices of the underlying commodity somehow become unlawful when Plaintiffs attempt to speculate on those same commodities in a futures market such as ICE.

**A.  THE ERCOT MARKET**

5.       As Plaintiffs acknowledge, ERCOT is an "Energy-Only" market, meaning generally generators are compensated for the energy (and associated ancillary services) they sell to ERCOT and do not receive other payments (e.g., capacity payments) to assist with the

recovery of overhead costs, capital investments, or a return on their investments.  In an Energy-Only market, generators must receive revenue from selling energy in excess of their marginal costs in order to recover their overall costs and to earn a return.  For an Energy-Only market to work, prices must reflect the value, subject to the PUCT offer cap, of the supply during periods when demand is high and supply is tight (rather than simply reflecting the marginal cost of the last unit needed to meet demand).

6.     Plaintiffs acknowledge not only that the ERCOT market is regulated by ERCOT and the PUCT, but they also concede that the PUCT has expressly authorized GDF SUEZ to offer its generation in ERCOT at prices above its marginal costs and up to an established system-wide offer cap (i.e., the precise conduct being challenged by Plaintiffs here).  The Commodity Futures Trading Commission ("CFTC") has limited jurisdiction over commodities in interstate commerce and exclusive jurisdiction with respect to futures contracts.   While the CFTC has sought to keep open the question as to what extent conduct in ERCOT (a purely intrastate market) is subject to the CEA, the CFTC nevertheless granted a broad exemption to ERCOT expressly exempting the market from most provisions of the CEA.

## B. DEFICIENCIES OF THE COMPLAINT

7.     Even if the facts alleged in the Complaint were assumed to be true, Plaintiffs have failed to allege facts necessary to meet the elements of a claim under the sections of the CEA cited by Plaintiffs.  In short, the Complaint must be dismissed with prejudice for any and all of the following reasons: (1) Plaintiffs have failed to plead a viable private right of action; (2) Plaintiffs lack standing to pursue any of the causes of action asserted; (3) the Complaint is precluded under the "filed rate doctrine;" and (4) Plaintiffs have otherwise failed to plead sufficient facts to state a cause of action under the CEA.

## II. STATEMENT OF ISSUES

### A. THERE IS NO PRIVATE RIGHT OF ACTION THAT PLAINTIFFS CAN PURSUE UNDER THE COMMODITY EXCHANGE ACT

8.     Plaintiffs admit that Defendants did not violate any law or regulation governing the ERCOT market.  Instead, Plaintiffs mistakenly rely on the CEA, which does not permit any of the causes of action asserted.  In recognizing Texas' independent regulatory regime, the CFTC exempted the ERCOT market from all but a few provisions of the CEA.  In particular, and as explained further below, the conduct occurring in the ERCOT market is exempt from the provisions giving rise to a private right of action for violations of the CEA.

### B. PLAINTIFFS LACK STANDING TO PURSUE THE CAUSES OF ACTION ASSERTED

9.     The only private right of action that exists in the CEA is contained in Section 22, but the Complaint does not cite or make any reference to Section 22.  *See* 7 U.S.C. § 25.  The Complaint only references Sections 6(c)(1), (2), and (3), each of which allows for enforcement by the CFTC but not for private rights of action. 7 U.S.C. §§ 9(1), (2), and (3).  Because Plaintiffs have no standing to pursue violations of Sections 6(c), their Complaint must be dismissed with prejudice in its entirety.  Apart from this foundational error, Plaintiffs specifically lack standing to challenge alleged misrepresentations to the CFTC under Section 6(c)(2) and do not have a right under the CEA to seek injunctive or declaratory relief.

### C. PLAINTIFFS' CLAIMS ARE PRECLUDED BY THE "FILED RATE DOCTRINE"

10.     The conduct that Plaintiffs challenge is expressly permitted by the PUCT, and GDF SUEZ's prices are deemed as a matter of law to be "rates" that have been "filed" with the PUCT.  Because the rates are permitted under ERCOT Rules and deemed filed with the PUCT, also as a matter of law, they are not subject to allegations that they are "too high, unfair or unlawful" under the well-settled "filed rate doctrine."  The Fifth Circuit has specifically and

unambiguously held that the filed rate doctrine bars claims for damages arising under other federal statutes stemming from rates filed in the Texas energy market that are subject to PUCT oversight.  Plaintiffs cannot overcome the direct precedent that precludes their claims.

## D. PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

11.    Plaintiffs have failed to meet the heightened pleading standard under Rule 9(b) to assert a market manipulation claim sounding in fraud.  Plaintiffs also fail to properly plead the elements of a manipulation claim under either Rule 8's lenient notice pleading standard or Rule 9(b)'s heightened pleading standard.  Moreover, the prices for any ERCOT-related products traded on ICE cannot be considered manipulated or "artificial" prices because the influence of Defendants' ERCOT activity on the prices of such ICE-related derivatives—*if any*—is solely a consequence of lawful activity in ERCOT as permitted by the PUCT.  Furthermore, because the CEA only permits private litigants to recover for actual damages, Plaintiffs' failure to plead actual damages with any specificity is fatal to their claims.  Finally, for the reasons demonstrated below, Plaintiffs' claim under Count II for aiding and abetting fails as a matter of law.

## III. NATURE AND STAGE OF PROCEEDING

12.    Plaintiffs jointly filed the Complaint on April 22, 2014 [Dkt. No. 1].  On April 23, 2014, Plaintiffs requested that Defendants waive service, and on May 8, 2014, Defendants agreed to such waiver.[2]

---

[2] Raiden contemporaneously filed a Petition for Rulemaking to Eliminate § 25.504(c), Project No. 42424, with the PUCT on April 21, 2014 (the "Petition") seeking to repeal the small fish rule.  P.U.C. Subst. R. §25.504(c).  After considering the Petition and the public comments filed, on June 20, 2014, the PUCT unanimously denied the Petition.  *See* Docket. No. 42424, Petition for Rulemaking (Apr. 21, 2014) and Order Denying Petition for Rulemaking (June 20, 2014).

## IV. STANDARDS APPLICABLE TO RULE 12 MOTIONS

### A.  RULE 12(B)(1) STANDARD

13.     Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a claim if the court lacks subject matter jurisdiction over the dispute.  *Weisskopf v. UJA-Fed'n, Inc.*, 889 F. Supp. 2d 912, 918–19 (S.D. Tex. 2012).  "If a plaintiff lacks standing to assert a claim, a federal court lacks subject-matter jurisdiction over that claim."  *Wright v. Brady*, No. H-06-2021, 2006 WL 2371327, at *1 (S.D. Tex. Aug. 15, 2006).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  When a Rule 12(b)(1) motion to dismiss is filed in conjunction with other Rule 12 motions, the court must consider the Rule 12(b)(1) jurisdictional challenge prior to addressing motions attacking the merits.  *Id.*

### B.  RULE 12(B)(6) STANDARD

14.     Federal Rule of Civil Procedure 12(b)(6) requires dismissal if a plaintiff fails to state a claim upon which relief can be granted. *Grynberg v. BP P.L.C.*, 855 F. Supp. 2d 625, 639 (S.D. Tex. 2012).  While a court must accept as true all of the factual allegations contained in the complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must do more than recite the formulaic elements of a cause of action.  *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 661 (W.D. Tex. 2013).  Rather, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice" to prevent dismissal.  *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1997).

## V. MOTION TO DISMISS

### A. THERE IS NO PRIVATE RIGHT OF ACTION THAT PLAINTIFFS CAN PURSUE UNDER THE COMMODITY EXCHANGE ACT

15.     The CFTC has exempted transactions in the ERCOT market from all CEA private rights of action.  Allowing Plaintiffs to maintain a private right of action under the CEA to challenge as manipulation prices in ERCOT (and, indirectly, prices in commodity markets such as ICE that reference ERCOT prices) theoretically resulting from Defendants' lawful conduct specifically authorized and regulated by the PUCT would undermine the very purpose of the exemption.  On April 2, 2013, the CFTC entered a Final Order pursuant to its broad authority under Section 4(c)(6) of the CEA[3] that specifically exempts the ERCOT markets "from the provisions of the CEA and Commission regulations, with the exception of *the Commission's* general anti-fraud and anti-manipulation authority, and scienter-based prohibitions, under CEA Sections 2(a)(l)(B), 4(d), 4b, 4c(b), 4o, 4s(h)(l)(A), 4s(h)(4)(A), 6(c), 6(d), 6(e), 6c, 6d, 8, 9, and 13 of the Act and any implementing regulations promulgated under these sections . . . ."  *See* Final Order in Response to a Petition to Exempt Specified Transactions from Certain Provisions of the Commodity Exchange Act, 78 Fed. Reg. 19,880, 19,880 (Apr. 2, 2013) ("Final Order") (emphasis added).[4]  While the CFTC specifically excepted various sections of the CEA—including its own anti-fraud and anti-manipulation sections—from the exemption, it just as clearly did **not** except private rights of action under Section 22 of the CEA from the exemption. In other words, the CFTC retained its own right to prosecute claims of fraud and manipulation

---

[3] The CFTC's authority under Section 4(c)(6) of the CEA permits the CFTC, upon a finding that it would be consistent with the public interest and the purposes of the CEA, to exempt from the CEA's requirements any agreement, contract, or transaction that is entered into pursuant to a tariff or rate schedule approved or permitted to take effect by FERC or by the applicable State authority.  *See* 7 U.S.C. § 6(c)(6).  The CFTC's broad authority is limited only by Section 4(d), which provides that "[t]he granting of an exemption under this section shall not affect the authority of the Commission . . . to conduct investigations . . . or to take enforcement action for any violation of any provision of this chapter . . . ."  7 U.S.C. § 6(d).  There is no such savings clause for the private right of action.
[4] *See* Proposed Order and Request for Public Comment, 77 Fed. Reg. 52,138 (Aug. 28, 2012).

that occur within its jurisdiction, but it did not provide a similar right for private litigants.

16.    The conduct Plaintiffs challenge in their Complaint, namely the price at which GDF SUEZ offered certain generation capacity into the ERCOT real-time market, falls squarely within the confines of the exemption set forth in the Final Order.[5]  Plaintiffs cannot circumvent this exemption by complaining that commodity prices arrived at lawfully in ERCOT become unlawful and manipulative when they seek to speculate on the same underlying commodities in futures markets such as ICE.  This Court must therefore dismiss Plaintiffs' CEA claims because GDF SUEZ's conduct is exempt from these claims pursuant to the CFTC's Final Order.

17.    The CFTC's Final Order explicitly states, however, that in granting the exemption, it does not express an opinion as to whether the CFTC has jurisdiction over the ERCOT market with regard to the anti-fraud and anti-manipulation powers that the CFTC retained.  *See* Final Order, 78 Fed. Reg. at 19,881 n.15.  This does not mean that the transactions at issue in this case are exempt from comprehensive regulatory oversight.

18.    As recognized in the Final Order, the PUCT retains its long-standing authority to regulate the ERCOT market, including its authority to monitor for abuses of "market power associated with the generation, transmission, distribution, and sale of electricity in [Texas]." Tex. Util. Code Ann. § 39.157 (West Supp. 2013) ("PURA").  Pursuant to this legislative grant of authority, the PUCT has the power to ferret out and deter abuses of market power by

---

[5] To qualify for the exemption, the transaction in question must first be one of the enumerated, energy-related products that are defined within the Final Order.  Section 2(a)(2) of the Final Order encompasses "Energy Transactions," which are defined to include "transactions in a . . . 'Real-Time Market' . . . for the purchase or sale of a specified quantity of electric energy at a specified location . . . ."  *See* Final Order, 78 Fed. Reg. at 19,913. Second, the subject transaction must be offered into the market by an "appropriate person," as that term is defined within the confines of the CEA and the Final Order.  The CFTC clarified that the term includes "persons [like GDF SUEZ] who are in the business of . . . [g]enerating, transmitting, or distributing electric energy . . . ."  *Id.* at 19,880. Finally, the transaction at issue must be conducted pursuant to a "tariff, rate schedule, or protocol . . . approved or permitted to have taken effect by . . . the [PUCT]."  *Id.*  It is undisputed that the alleged transactions were fully compliant with GDF SUEZ's Voluntary Mitigation Plan, by which the PUCT specifically permitted offers of generation into the real-time market at prices up to the system-wide offer cap.

exercising its rights to seek an injunction and civil penalties in a court of law, assess administrative penalties, order disgorgement of all unlawfully-obtained excess revenue, and suspend or revoke a violator's registration to operate in the ERCOT market. PURA §§ 15.021 (West Supp. 2007), 15.023 (West Supp. 2013), and 39.356 (West Supp. 2007). The PUCT also has the authority to enter into a voluntary mitigation plan ("VMP") with any market participant to provide a safe harbor against an allegation of market power abuse for adhering to an agreed upon course of conduct. P.U.C. Subst. R. § 25.504. It is pursuant to this authority that the PUCT expressly authorized GDF SUEZ's conduct that now forms the basis of Plaintiffs' Complaint.[6] Apart from the PUCT, the ERCOT market is also subject to pervasive oversight by its Independent Market Monitor, which is charged with identifying conduct that would threaten or compromise the competitive performance and operational efficiency of the market.

19. It was in recognition of this regulatory framework that the CFTC issued the Final Order and granted the broad exemption to ERCOT. The exemption allows the PUCT to efficiently and effectively regulate the ERCOT market, and the fact that ICE offers contracts that reference ERCOT prices does not nullify this exemption nor permit Plaintiffs a private right of action under the CEA premised upon prices in commodity markets such as ICE that are derived from prices lawfully established in ERCOT.

## B. PLAINTIFFS LACK STANDING TO PURSUE THE CAUSES OF ACTION ASSERTED

### 1. Plaintiffs Lack Standing to Pursue a Private Right of Action under CEA Sections 6(c)(1), (2), or (3)

20. Counts I, II, III, and IV are premised upon alleged violations of CEA Sections 6(c)(1), (2), and (3). 7 U.S.C. §§ 9(1), (2), and (3). Enforcement of these provisions, however, is strictly limited to the CFTC. Section 6(c)(4)(A) of the CEA, entitled "Enforcement Authority

---

[6] *See* Docket No. 41276, Order Approving Voluntary Mitigation Plan (Mar. 28, 2013).

of the Commission," states: "If ***the Commission*** has reason to believe that any person . . . is violating or has violated this subsection, . . . ***the Commission*** may serve upon the person a complaint."  7 U.S.C § 9(4)(A) (emphases added).  The only private right of action that exists in the CEA is contained in Section 22 of the CEA, but the Complaint does not cite or make any reference to Section 22.  *See* 7 U.S.C. § 25.  The Complaint only references Sections 6(c)(1), (2), and (3), none of which allows for a private right of action.  Plaintiffs have no standing to bring a complaint for any alleged violations of Sections 6(c)(1), (2), or (3) of the CEA, and their Complaint must be dismissed in its entirety.

## 2. Plaintiffs Lack Standing to Pursue a Private Right of Action for Conduct Proscribed by CEA Section 6(c)(2)

21.     Even if Plaintiffs brought their claims pursuant to Section 22 of the CEA, that section does not allow for a private right of action for violations of 6(c)(2) for any alleged misrepresentations GDF SUEZ made regarding "its expected generation within ERCOT."  *See, e.g.*, Complaint at ¶¶ 56 and 60.  Section 22 of the CEA, which provides the boundaries of the causes of action available to private litigants, is applicable only in limited circumstances.  7 U.S.C. § 25.  Under Section 22(a)(1)(D), private parties who purchased or sold futures or swaps may only bring a cause of action against the entity alleged to have violated the CEA if the violation constitutes either:

> (i) the use or employment of, or an attempt to use or employ, in connection with a swap, or a contract of sale of a commodity, in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative device or contrivance in contravention of such rules and regulations as the Commission shall promulgate by not later than 1 year after July 21, 2010; or
>
> (ii) a manipulation of the price of any such contract or swap or the price of the commodity underlying such contract or swap.

7 U.S.C. § 25(a)(1)(D)(i)–(ii).

22.     The language of Sections 22(a)(1)(D)(i) and (ii) only proscribes conduct

commensurate with that prohibited under Sections 6(c)(1) and (3).  *See* 7 U.S.C. §§ 25(a)(1)(D)(i) and (ii); 7 U.S.C. §§ 9(1) and (3).  Section 22 does not allow for a private right of action for "false or misleading statement[s] of a material fact to the Commission . . . ," conduct which is prohibited by Section 6(c)(2).  *See* 7 U.S.C. § 9(2).  Only the CFTC may bring an action for such misrepresentations.[7]  Private litigants are not empowered to seek relief for allegedly false or misleading representations made to the CFTC because this relief is not provided in Section 22.  Plaintiffs' cause of action under Section 6(c)(2) must be dismissed with prejudice.

**3.  Plaintiffs Lack Standing to Seek Injunctive Relief**

23.     Count III suffers from Plaintiffs' continued refusal to distinguish between rights belonging to private litigants and those belonging to the CFTC alone.  Private litigants do not have the authority to seek injunctive relief under the CEA.  Section 22(a) of the CEA, which renders entities found to have violated its provisions "liable for actual damages," provides that "the rights of action authorized by this subsection . . . shall be the ***exclusive remedies*** under this chapter available to any person who sustains loss as a result . . ."  7 U.S.C. § 25(a)(2) (emphasis added).  This language has been interpreted to "limit[] damages to private litigants bringing claims under the CEA to 'actual damages' only."  *See, e.g.*, *In re Cannon v. J.C. Bradford & Co.*, 230 B.R. 546, 594 (Bankr. W.D. Tenn. 1999) (reversed on other grounds).

24.     The authority to bring an action for injunctive relief for a violation of the CEA is

---

[7] The Supreme Court's analysis relating to the implied private right of action available under Section 10(b) [15 U.S.C. § 78j] of the Securities Exchange Act is instructive.  The Court has refused to extend the implied private right of action to reach conduct beyond that specifically proscribed by the text of the statute.  *See Cent. Bank of Denver, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 173 (1994).  The argument applies with even greater force here where Congress has enacted an express provision granting a private right of action that sets explicit boundaries on the circumstances under which such an action may be brought.  As the Court noted in *Pinter v. Dahl*, "[t]he ascertainment of congressional intent with respect to the scope of liability created by a particular section of the Securities Act must rest primarily on the language *of that section*.  The broad remedial goals of the . . . Act are insufficient justification for interpreting a specific provision more broadly than its language and the statutory scheme reasonably permit.  We must assume that Congress meant what it said."  486 U.S. 622, 653 (1988) (emphasis added) (internal citations and quotation marks omitted).

reserved for the CFTC alone.  CEA Section 6c, entitled "Enjoining or restraining violations,"

provides as follows:

> Whenever it shall appear **to the Commission** that any registered entity or other
> person has engaged, is engaging, or is about to engage in any act or practice
> constituting a violation of any provision of this chapter [7 USCS §§ 1 et seq.] . . .
> **the Commission may bring an action** . . . to enjoin such act or practice, or to
> enforce compliance with this chapter [7 USCS §§ 1 et seq.], or any rule,
> regulation or order thereunder . . . .

7 U.S.C. § 13a-1(a) (emphases added).  "Section 6c of the [CEA], 7 U.S.C. § 13a-1, grants to the

Commission broad equitable powers which are not conferred upon private parties." *Merrill*

*Lynch Futures Inc. v. Kelly*, No. 84 Civ. 2406-CSH, 1984 WL 217, at *2 (S.D.N.Y. Apr. 19,

1984) (denying plaintiffs' request for a preliminary injunction freezing the assets of the

defendants and finding such "drastic relief . . . available only to the Commission").  Plaintiffs

lack standing to pursue an action for injunctive relief and Count III of their Complaint must be

dismissed with prejudice.

### 4.  Plaintiffs Lack Standing to Seek Declaratory Relief

25.     As set forth in detail above in Section V(B)(3), actual damages are the exclusive

remedy available to private litigants under the CEA.  Plaintiffs have no standing to sue for

declaratory relief and, accordingly, Count IV must be dismissed with prejudice.  Furthermore,

should the Court dismiss Counts I–III, any subject matter jurisdiction the Court has over

Count IV would terminate.  "The Declaratory Judgment Act is not an independent ground for

jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are

present." *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980).  No such independent basis for

subject matter jurisdiction exists here.[8]   In any event, Count IV should be dismissed on the

---

[8] Similarly, the Court's dismissal of Counts I–III would terminate any subject matter jurisdiction it might have over
all vaguely asserted common law claims over which Plaintiffs allege the Court retains ancillary jurisdiction under
28 U.S.C. § 1367.  Complaint at p. 3-4.

grounds that it is duplicative of relief sought elsewhere in the Complaint.  *See, e.g.*, *Ladd v. Colonial Sav., F.A.*, No. 3:13-CV-1817-P, 2014 WL 1393038, at *5 (N.D. Tex. Apr. 10, 2014).

## C.  PLAINTIFFS' CLAIMS ARE PRECLUDED BY THE "FILED RATE DOCTRINE"

26.    Plaintiffs' claims regarding Defendants' alleged violation of the CEA fail as a matter of law and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs are asking this Court to determine what electricity prices **should have been** in ERCOT on particular days and hours in 2013 and to change existing law.  All of Plaintiffs' claims are premised on the allegation that the prices in the ERCOT real-time market were too high because of Defendants' conduct.  Plaintiffs allege damages based on a "reconstruction of supply and demand curves (based on information available to [plaintiffs] from ERCOT)" by which Aspire "calculated that GDF Suez's manipulation caused prices to be higher than they would have been had the illegal manipulation not have occurred." Complaint at ¶ 50.  This is precisely the type of claim foreclosed by the filed rate doctrine.

27.    "The filed rate doctrine bars judicial recourse against a regulated entity based upon allegations that the entity's 'filed rate' is too high, unfair or unlawful." *Tex. Comm. Energy v. TXU Energy, Inc.*, 413 F.3d 503, 507 (5th Cir. 2005) ("TCE"); *see also Util. Choice, L.P. v. TXU Corp.*, No. Civ.A.H-05-573, 2005 WL 3307524, at *2 (S.D. Tex. Dec. 6, 2005) (quoting *TCE*).  The filed rate doctrine was first recognized in *Keogh v. Chi. & N. W. Ry. Co.*, 260 U.S. 156 (1922) and provides that "any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *TCE*, 413 F.3d at 508 (quoting *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994)) (internal quotation marks omitted).  "Since *Keogh*, courts have consistently applied the filed rate doctrine in a number of energy cases to preclude lawsuits against companies based on rates that were filed with a government agency." *TCE*, 413 F.3d at 508.  "Application of the filed rate

doctrine in any particular case is not determined by the culpability of the defendant's conduct or the possibility of inequitable results."  *Util. Choice*, 2005 WL 3307524, at *2 (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998)) (internal quotation marks omitted).

28.     The filed rate doctrine is driven by the principle that legislative bodies create agencies for the specific purpose of setting rates, and courts are not well suited to engage in retroactive rate setting.  *See Marcus*, 138 F.3d at 59–61.  For a court to sustain a challenge to a rate, it must second-guess the rate set by the agency and make a post-hoc determination of a hypothetical "reasonable" rate.  The Supreme Court rejected this role, holding that the "abstract" reasonableness inquiry should be left to the regulators.  *See Mont.-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 251 (1951).  The doctrine applies even where it might be possible for a court to calculate some other rate, because the courts defer to the oversight of the agency.  *See id.* at 251; *Wegoland*, 27 F.3d at 19.  While "[t]his rule is undeniably strict, and . . . obviously may work hardship in some cases," the proper government officials or agency may pursue action in the appropriate circumstances.  *See Marcus*, 138 F.3d at 59 (quoting *Louisville & Nashville R.R. Co. v. G. A. Maxwell*, 237 U.S. 94, 97 (1915)); *Wegoland*, 27 F.3d at 22.

29.     The Fifth Circuit has held that the filed rate doctrine bars claims for damages stemming from rates "filed" in the Texas energy market that are subject to PUCT oversight. *TCE*, 413 F.3d at 509–10.  The Fifth Circuit held that, even though the PURA does not require rates in the ERCOT market to be "filed" with the PUCT, and even though the PUCT does not set or approve rates, the "PUCT's oversight over the market is sufficient to conclude that . . . energy rates are 'filed' within the meaning of the filed rate doctrine."  *Id.* at 510.  As Plaintiffs admit, the PUCT specifically authorized the alleged conduct at issue here.  *See* Complaint at ¶¶ 12–14 Pursuant to the filed rate doctrine, this Court must defer to the PUCT's authority over the

ERCOT market and dismiss Plaintiffs' claims with prejudice.[9]

## D. PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

30.     Plaintiffs' Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted.

### 1. Allegations that GDF SUEZ Traded on Nonpublic Information Do Not Constitute a Violation of the CEA

31.     Plaintiffs suggest the possibility that GDF SUEZ traded on nonpublic information.  Complaint at ¶ 44.  Plaintiffs are asking this Court to impute an insider trading prohibition into the CEA that does not exist.  In fact, the CFTC specifically addressed this issue in its Final Rule on market manipulation, expressly authorizing and expecting market participants to trade on proprietary, nonpublic information.  *See* Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation, 76 Fed. Reg. 41,398, 41,403 (July 14, 2011) (codified at 17 C.F.R. pt. 180) ("The Commission recognizes that unlike securities markets, derivatives markets have long operated in a way that allows for market participants to trade on the basis of lawfully obtained material nonpublic information.").  Plaintiffs' suggestion that Defendants improperly traded on insider information fails.

### 2. Plaintiffs Fail to State a Claim for any Violation of the CEA Sounding in Fraud

32.     Although Plaintiffs are careful never to use the word "fraud" in the Complaint,

---

[9] The filed rate doctrine bars any claim or cause of action that challenges the reasonableness of rates.  *Marcus*, 138 F.3d at 58.  *See TCE*, 413 F.3d at 508–09 (state and federal antitrust law); *M.R. Taffet v. S. Co.,* 967 F.2d 1483 (11th Cir. 1992) (en banc) (federal RICO); *Utilimax.com, Inc. v. PPL Energy Plus, LLC,* 273 F. Supp. 2d 573, 574, 584 (E.D. Pa. 2003), *aff'd*, 378 F.3d 303 (3d Cir. 2004) (federal antitrust laws "and numerous state laws").  The filed rate doctrine even bars claims alleging that rates were established by fraud.  *See Wegoland*, 27 F.3d at 22.  In *TCE*, the Fifth Circuit rejected plaintiff's assertion "that the district court erred [in granting the dismissal] by applying the filed rate doctrine to preclude it from recovering damages it sustained when [the defendant] allegedly manipulated its market position to create substantial price increases in the [Texas] short-term energy market." *TCE*, 413 F.3d at 503, 508–09.

Plaintiffs' allegations of withholding sound in fraud and, therefore, must meet the heightened pleading standard required for fraud-based claims under Federal Rule of Civil Procedure 9(b). To successfully allege a violation of CEA Section 22(a)(1)(D)(i), Plaintiffs must allege fraud. *See* 7 U.S.C. § 25(a)(1)(D)(i) (requiring the use or employment of a "manipulative device or contrivance").[10]  Moreover a claim under CEA Section 22(a)(1)(D)(ii) based on allegations of economic and physical withholding also must sound in fraud.  *See, e.g.*, *United States v. Radley*, 659 F. Supp. 2d 803, 816 (S.D. Tex. 2009) (requiring a withholding claim under the CEA to involve misleading or fraudulent conduct), *aff'd on other grounds*, 632 F.3d 177 (5th Cir. 2011).[11]

33.     Pursuant to Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  While the Fifth Circuit has not reached the issue as to the applicability of the heightened pleading standard to causes of action arising under the CEA, the weight of authority in other jurisdictions mandates that claims sounding in fraud, such as the ones asserted by Plaintiffs, must meet the more stringent requirement.[12]  Indeed, as one court explained:

> Although plaintiffs have apparently carefully avoided the word "fraud" in their complaint, this is not dispositive in a determination of the essence of the factual premises of their claim, nor whether Rule 9(b) applies.  The wording of Rule 9(b) "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud

---

[10] *See Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058 (2014) (applying 9(b) standard to similar language under 15 U.S.C. 78j and Rule 10b-5).

[11] *Radley* was brought under Section 9(a)(2) of the CEA, which mirrors Section 22(a)(1)(D)(ii) by prohibiting "[a]ny person to manipulate or attempt to manipulate the price of any commodity in interstate commerce."

[12] Defendants are aware of no Fifth Circuit authority determining whether Rule 8 or Rule 9(b) applies to fraud-based claims under Section 22(a)(1(D)(ii) of the CEA.  In *Hershey v. Energy Partners, L.P.*, the Fifth Circuit did not reach the issue because it determined the plaintiffs failed to state a claim under Rule 8's liberal pleading standard.  610 F.3d 239, 245 n.12 (5th Cir. 2010).  While two Southern District of Texas cases (*CFTC v. Johnson*, 408 F. Supp. 2d 259 (S.D. Tex. 2005) and *CFTC v. Enron Corp.*, No. H-03-909, 2004 WL 594752 (S.D. Tex. Mar. 10, 2004) declined to apply Rule 9(b) to CEA market manipulation claims, a more recent line of cases in the Southern District of New York has applied Rule 9(b)'s heightened pleading standard to private manipulation claims under the CEA where the cause of action sounds in fraud.  *See, e.g.*, *In re Amaranth  Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 535 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013) ("Amaranth").

cause of action."  As such, we turn to the allegations as pled in the complaint to determine if they sound in fraud.[13]

34.     To satisfy the pleading requirements of Rule 9(b) for a market manipulation claim under the CEA, Plaintiffs must specify:  (1) what manipulative acts were performed, (2) which defendants performed the manipulative acts, (3) when the manipulative acts were performed, and (4) what effect the scheme had on the market for the securities at issue.  *See, e.g.*, *In re Crude Oil*, 2007 WL 1946553, at *6 (further holding that this relaxed standard under Rule 9(b) applicable to market manipulation claims "is not a license to base claims of fraud on speculation and conclusory allegations") (internal citations and quotation marks omitted).  Plaintiffs miss the mark entirely and fail to even articulate a manipulative scheme that would satisfy the initial prong of the required analysis.

35.     With regard to economic withholding, in an apparent attempt to imply some level of deception, Plaintiffs complain that GDF SUEZ's statement of its expected generation within ERCOT failed to disclose to ERCOT its alleged intent to economically withhold generation.  Complaint at ¶ 60.  However, Plaintiffs not only fail to identify what statements were made by GDF SUEZ, they fail to point to any obligation to disclose to anyone at what price the company intended to offer generation or to allege that GDF SUEZ violated any ERCOT Rules related to offering generation.  Without more, the notion that GDF SUEZ can be deemed to have acted fraudulently where its conduct was expressly endorsed by the PUCT (the regulatory body most directly responsible for overseeing the conduct at issue) is unsupportable.

36.     Plaintiffs fail to plead with sufficient specificity its allegations of physical

---

[13]  *In re Crude Oil Commodity Litig.*, No. 06-Civ-6677(NRB), 2007 WL 1946553, at *5 (S.D.N.Y. June 28, 2007) (quoting *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004)).  As acknowledged by the Southern District of Texas in *In re Energy Transfer Partners*, the Southern District of New York held that market manipulation is "inherently deceptive," such that a complaint alleging manipulation must satisfy Rule 9(b)'s heightened pleading standard.  *In re Energy Transfer Partners Natural Gas Litig.*, No 4:07-cv-3349, 2009 WL 2633781, at *8 (S.D. Tex. Aug. 26, 2009) (citing *In re Amaranth  Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 535 (S.D.N.Y. 2008)).

withholding.  Plaintiffs allege with no factual support whatsoever that GDF SUEZ physically withheld generating units with the intent to manipulate the ERCOT market by designating the units as either "OFF" or "EMR."   Complaint at ¶¶ 32-33.   Plaintiffs make only the unsubstantiated allegation that these designations were not "related to any physical need to have its units removed from generation."   Complaint at ¶ 33.   The Complaint fails to explain the designations, their meaning or purpose, under what circumstances they are permitted, or to even to allege that GDF SUEZ's use of the designations was inaccurate or in violation of PUCT or ERCOT Rules.   Nowhere do Plaintiffs identify any legal obligation for generators to offer generation as available except for "physical need."  For these reasons, Plaintiffs' Complaint must be dismissed.  *See U.S. ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 204 (5th Cir. 2013) ("A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6).") (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 n.8 (5th Cir. 2009)) (internal quotation marks omitted); *see also Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

### 3. Plaintiffs Fail to State a Claim for Market Manipulation under CEA Section 22(a)(1)(D)(ii)

37.     To properly allege a claim for market manipulation under Section 22(a)(1)(D)(ii), Plaintiffs must plead sufficient facts to establish that (1) the defendant possessed an ability to influence market prices, (2) an artificial price existed, (3) the defendant caused the artificial price, and (4) the defendant specifically intended to cause the artificial price.  *Hershey*, 610 F.3d at 247–48.  As articulated by the Southern District of Texas, "[i]n order to state a manipulation claim, the plaintiffs must allege that defendants both intentionally acquired the ability to manipulate prices and exercised that ability to cause artificial prices."  *In re Energy Transfer Partners*, 2009 WL 2633781, at *4 (citing *Volkart Bros., Inc. v. Freeman*, 311 F.2d 52, 58–59

(5th Cir. 1962).  Plaintiffs' simple recitation of the four elements, couched as claims, fails to meet even the liberal pleading standard under Federal Rule of Civil Procedure 8.  Even if Plaintiffs had pled these elements with sufficient particularity (which they did not), Plaintiffs fail to state a claim upon which relief can be granted. Plaintiffs' Complaint fails as a matter of law because it is devoid of any allegations supporting the positions that an artificial price existed, that Defendants caused an artificial price, or that Defendants specifically intended to cause an artificial price.

a)   Plaintiffs Fail to Establish Defendants' Conduct Caused the Existence of an Artificial Price

38.     The Complaint fails as a matter of law with regard to the existence of an artificial price.  Plaintiffs allege that GDF SUEZ caused an artificial price by seeking a price above its marginal cost.  However, a supplier of a commodity cannot create an artificial price simply by demanding a price that is higher than its marginal costs.  Absent a corner, squeeze, or fictitious trade (none of which have been alleged by Plaintiffs), a supplier seeking the highest price possible cannot, as a matter of law, create artificial prices except where economic withholding violates the market rules in which the supplier is participating.  *Radley*, 659 F. Supp. 2d at 816.  According to the court in *U.S. v. Radley*, a withholding claim can only arise out of applicable market rules or other obligation to sell.  *Id.* ("Absent a contract obligation or statutorily imposed position restriction, neither of which was present in this case, a party is never required to sell or purchase anything.  To refuse to do so is not misleading or fraudulent, regardless of the motivation.").  Here, the PUCT expressly exempted the conduct in question from any prohibition against withholding.  As Plaintiffs admit, the PUCT expressly held that GDF SUEZ, as a small fish, cannot exert ERCOT-wide market power.  *See* Complaint at ¶¶ 11-13.

39.     While Plaintiffs' financial withholding claims are premised on the allegation that GDF SUEZ bid uneconomically in ERCOT, the Complaint in fact explains exactly how a

generator bidding above its marginal costs during periods of scarcity is economically rational:  if a "generator's energy is needed, such as when supply is tight, ERCOT will increase the LMP to attract and capture the needed energy, offered only at that higher LMP."   Complaint at ¶ 9. Therefore, according to Plaintiffs, at times of tight supply, GDF SUEZ offered its generation at prices above its marginal costs.  In other words, were prices to reach as high as GDF SUEZ's offers, then GDF SUEZ's offers would have been accepted by ERCOT, and GDF SUEZ would have sold its generation at the higher price.   As Plaintiffs explain, this is exactly what is contemplated by the PUCT.

b)  Plaintiffs Fail to Plead Specific Intent

40.     Plaintiffs' Complaint is devoid of anything other than unsubstantiated allegations that Defendants specifically intended to cause an artificial price, via either economic or physical withholding.   "[T]o plead scienter, it is insufficient to allege merely a 'generalized motive' that could be 'imputed to any publicly-owned, for-profit endeavor." *In re LIBOR Antitrust Litig*., 962 F. Supp. 2d at 616 (S.D.N.Y. 2013) (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996).   A market participant who undertakes conduct expressly authorized by the regulator responsible for regulating prices cannot be said to intend to create an artificial price.  Of course, transacting on commodity markets such as ICE cannot turn lawful conduct in ERCOT into manipulative conduct.   To the extent that prices in ERCOT are lawful and not artificial, any prices in commodity markets that are derived from ERCOT prices cannot be artificial.

41.     Further, the standard for specific intent under the CEA involves "an intent to influence the precise market manipulation of which the defendants are accused" as opposed to simply alleging a causal relationship between the defendants actions and an impact on the futures market. *In re Energy Transfer Partners*, 2009 WL 2633781, at *6–7.  Plaintiffs fail to satisfy this standard because they allege no facts regarding a specific intent by Defendants to manipulate

prices on commodities futures markets or the underlying commodities market.  Instead, Plaintiffs

offer conclusory and generalized assertions regarding Defendants' intent and hypothetical

impacts Defendants' lawful conduct in ERCOT allegedly had on commodities futures markets.

These vague assertions are insufficient to withstand a motion to dismiss.  Plaintiffs do not even

identify a single futures position or virtual transaction that resulted in a loss for Plaintiffs or that

allegedly involved an artificial price.  According to the Fifth Circuit:

> Under the CEA, actionable manipulation must be directed at "the price of the
> commodity underlying *such* contract."  7 U.S.C. § 25(a)(1)(D) (emphasis added
> [by Fifth Circuit]). By definition, the underlying of a futures contract depends on
> the *contract* itself . . . . Therefore, Plaintiffs must allege that Defendants
> specifically intended to manipulate the underlying commodity of *that* contract,
> not some hypothetical natural gas futures contract.

*Hershey*, 610 F.3d at 247.  Without any knowledge of the futures contracts Plaintiffs bought or

sold, it is impossible to discern whether Defendants had the specific intent to manipulate the real-

time price for electricity in the ERCOT market to affect the price of the precise commodity

underlying Plaintiffs' positions.  Accordingly, Plaintiffs' factual allegations are insufficiently

pleaded as a matter of law.

42.     Because Plaintiffs failed to plead the elements of market manipulation to support

a violation of CEA Section 22(a)(1)(D)(ii), their Complaint should be dismissed in its entirety

because the viability of each Count is premised upon the existence of a violation of the CEA's

market manipulation prohibitions.

**4.  Plaintiffs Fail To Plead Actual Damages**

43.     Plaintiffs' claims are insufficient as a matter of law because Plaintiffs fail to

properly plead damages.  To maintain standing to seek a private right of action under the CEA,

Plaintiffs are required to plead actual damages.  *In re LIBOR Antitrust Litig.*, 962 at 620.  "The

term 'actual damages' has been applied by courts in a straightforward manner to require a

showing of actual injury caused by the violation." *Ping He (Hai Nam) Co. Ltd. v. NonFerrous Metals (U.S.A.) Inc.*, 22 F. Supp. 2d 94, 107 (S.D.N.Y. 1998) (ruling that, "[e]ven if [defendant] violated every provision of the CEA or the CFTC rules, under the express language of § 22, [plaintiff] is only authorized to bring suit, and can only recover, for those violations that caused [plaintiff] to suffer 'actual damages'").

44.     Although Plaintiffs broadly assert they have suffered losses as a result of GDF SUEZ's allegedly manipulative practices, the Complaint fails to identify a single futures position or virtual transaction that resulted in a loss for Plaintiffs.  The complete universe of facts alleged relating to Plaintiffs' damages is contained within paragraph 51 of the Complaint, in which Plaintiffs assert that "GDF SUEZ's artificial price caused Aspire to lose $526,000, $4,298,448 and $2,832,000 on July 23, October 1 and November 22, respectively."  The specificity in dollar value and associated date of injury indicate that Aspire knows full well which positions it maintained that were allegedly injured by any artificial price that purportedly existed on those dates.[14]  Allegations made elsewhere in the Complaint indicate Plaintiffs have specific knowledge of additional dates on which GDF SUEZ's conduct allegedly resulted in an artificial price.  *See, e.g.*, Complaint at ¶¶ 20–26 (related to conduct occurring on July 3, 2013) and ¶¶ 29, 40 (asserting violations occurred on "nine separate days [in the summer of 2013]").  Armed with this knowledge, there is no plausible excuse for Plaintiffs' failure to provide any details about their alleged damages or even to contend that they were transacting in ERCOT futures or virtual trades on the dates the alleged physical and economic withholding took place.  Aspire's attempt

---

[14] In addressing similar allegations of artificial prices that resulted from discrete, episodic trading activity, courts have found complaints "devoid of any references to particular [futures] contracts" legally insufficient.  *In re LIBOR Antitrust Litig.*, 962 F. Supp. 2d at 621 (holding that, "because the alleged trader-based manipulation did not occur on every day of the Class Period, but rather on only a subset of those days—a subset that plaintiffs can, at least in part, identify . . . the broad allegations plaintiffs have offered are insufficient to allege actual damages"); *see also In re Energy Transfer Partners*, 2009 WL 2633781, at *9–12 (upholding dismissal where plaintiffs failed to assert they held futures contracts during the time period in which the price was alleged to have been manipulated).

to extrapolate its damages to $20 million for unspecified injuries suffered over the last two years is unsupported by any factual allegations. Raiden's statement of its alleged damages is even more speculative. Raiden summarily alleges it "has lost significant amounts making virtual trades [as] a result of GDF Suez's [conduct]." Complaint at ¶ 51. These vague assertions are legally insufficient to support even an inference of actual damages. [15]

45.     To support a private right of action under Section 22 of the CEA, Plaintiffs must allege that Defendants manipulated the "underlying commodity" of *Plaintiffs'* futures contracts, "not some hypothetical . . . futures contract." *See, e.g.*, *Hershey*, 610 F.3d at 247. Because Plaintiffs fail to specify the futures (or virtual) contracts at issue, it is impossible to discern whether Defendants' alleged manipulation of the real-time price for electricity in the ERCOT market on specific days and specific hours in 2013 actually affected the precise commodity underlying Plaintiffs' positions, if any, on ICE. In light of Plaintiffs' complete failure to plead actual damages, or to even allege manipulation of a commodity underlying an identified futures position on ICE or otherwise, they have no standing to bring a cause of action under Section 22 of the CEA, and all Counts should be dismissed.[16]

## 5. Plaintiffs Fail to Establish Aider and Abettor Liability under the CEA

46.     A private right of action for aiding and abetting under the CEA requires a showing that the defendant aided and abetted the principal in committing one of the specifically enumerated violations of the CEA set forth in Section 22. *In re Energy Transfer Partners*, 2009 WL 2633781, at *12 ("Under the CEA, to state a claim for aiding and abetting, the plaintiffs must allege that the defendants (1) had knowledge of the principal's intent to commit a violation

---

[15] Because recovery in a private right of action is limited to actual damages suffered by plaintiffs, Plaintiffs have no standing to seek damages for any alleged injuries suffered by rate payers. Complaint at ¶ 47.

[16] Applying identical reasoning, Plaintiffs' asserted lost opportunity costs suffered as a result of their decision to "stay[] out of the market" cannot support a claim for relief. Complaint at ¶ 51. *See, e.g.*, *Sanner v. Bd. of Trade*, 62 F.3d 918, 924 (7th Cir. 1995) (finding farmers who refrained from selling soybeans "lacked standing to sue for their injury no matter what facts they might later be able to adduce").

of the Act; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective."). Accordingly, a prerequisite to a claim for aiding and abetting a violation of the CEA is an underlying violation of the CEA. Because Plaintiffs have failed to allege such a violation, Count II should be dismissed. Furthermore, a private right of action for aiding and abetting under the CEA requires willful participation and a clear showing of a specific intent to violate the law. Plaintiffs' Complaint falls woefully short of that standard. As Plaintiffs admit, the Generator Defendants have no independent control over either the offer or dispatch of their generation capacity. Complaint at ¶ 66. Count II must be dismissed with prejudice.

47.     Section 22 of the CEA provides that an entity that "willfully aids, abets, counsels, induces, or procures the commission of a violation of [the CEA]" shall be liable to any person injured by the conduct for actual damages suffered. 7 U.S.C. § 25(a)(1). Section 22(a)(1)(D) extends the private right of action to persons who purchased or sold futures or swaps and were injured by violations which constituted fraudulent or manipulative market behavior within the meaning of the chapter. 7 U.S.C. § 25(a)(1)(D). Despite Plaintiffs' misplaced assertion that the Generator Defendants violated Sections 6(c)(1), (2), and (3) of the CEA [7 U.S.C. §§ 9(1), (2), and (3)], the private right of action arises, if at all, under Section 22, and it is under this statutory framework that Plaintiffs' claims must be considered.

48.     Congress modeled the CEA's aiding and abetting provision on the federal statute that makes aiding and abetting a crime [18 U.S.C.S. § 2] and intended that it be interpreted consistently.[17]   Adhering to these standards, the Second Circuit in *Amaranth* affirmed the

---

[17] *Amaranth*, 730 F.3d at 181 (citing *Bosco v. Serhant*, 836 F.2d 271, 279 (7th Cir. 1987)). The elements required to establish aider and abettor liability under the CEA are "identical with those contemplated by the federal criminal aider and abettor statute. . . . [I]n order to state a claim against a defendant, plaintiffs must allege that the defendant (1) had knowledge of the principal's intent to commit a violation of the [Commodity Exchange] Act; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective." *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 255–256 (5th Cir. 2011) (citing *Damato v. Hermanson*, 153 F.3d 464, 473 (7th Cir. 1998) (internal punctuation omitted). Further, "[i]n addition to specific intent, it must be shown that

granting of defendant's motion to dismiss because the routine clearing functions undertaken by the defendant failed to support an inference that it either knew of Amaranth's intent to manipulate the market or engaged in conduct with the specific intent to further that alleged goal. *Amaranth*, 730 F.3d at 183–87.  The Fifth Circuit in *Amacker* similarly upheld the district court's decision to dismiss plaintiffs' complaint where defendants "did no more than execute regular trades requested by [the primary violator]."  *Amacker*, 657 F.3d at 257.   In reaching its conclusion, the Fifth Circuit noted that it had "often reiterated that, if the evidence show[ed] no more than transactions constituting the daily grist of the mill, it would be loathe to find aiding and abetting liability without clear proof of intent to violate the law."  *Id.* at 256 (internal punctuation and citations omitted).

49.     Plaintiffs admit that the Generator Defendants "do not have a will regarding their generation."  Complaint at ¶ 66.  Plaintiffs' admission is fatal to their cause of action against GDF SUEZ.  Without a will of their own regarding the offer or dispatch of the generation they are alleged to have economically and physically withheld from the market, the Generator Defendants cannot be found liable for aiding and abetting under the CEA.  *See Amacker*, 657 F.3d at 255–56 (requiring an intent to further the primary wrongdoer's CEA violation as an element of aider and abettor liability under the CEA).   Moreover, absent liability of the Generator Defendants, GDF SUEZ cannot be liable of aiding and abetting.

## VI. CONCLUSION AND PRAYER FOR RELIEF

50.     Defendants respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice and grant such other and further relief to which Defendants may show themselves justly entitled.

---

the assistance rendered was substantial."  *CFTC v. Johnson*, 408 F. Supp. 2d 259, 268 (S.D. Tex. 2005) (citing *Woodward v. Metro Bank of Dall.*, 522 F.2d 84, 88, 95–95 (5th Cir. 1975)).

DATED:  June 23, 2014.

Respectfully submitted,

By:/s/ Tony L. Visage
    Stephen B. Crain
    Attorney-In-Charge
    State Bar No. 04994580
    Federal Bar No. 12499
    Tony L. Visage
    State Bar No. 00788587
    Federal Bar No. 17248
    Amy E. Parker
    State Bar No. 24051156
    Federal Bar No. 626178
    J. Erick Sandlin
    State Bar No. 24056265
    Federal Bar No. 872070
    Leslie D. Wilson
    State Bar No. 24084109
    Federal Bar No. 1708460

    711 Louisiana Street, Suite 2300
    Houston, Texas 77002-2781
    (713) 223-2300 Telephone
    (713) 221-1212 Facsimile
    stephen.crain@bgllp.com
    tony.visage@bgllp.com
    amy.parker@bgllp.com
    erick.sandlin@bgllp.com
    leslie.wilson@bgllp.com

COUNSEL FOR DEFENDANTS GDF SUEZ
ENERGY NORTH AMERICA, INC.; ENNIS
POWER COMPANY, LLC; WISE COUNTY
POWER COMPANY, LLC; MIDLOTHIAN
ENERGY, LLC; HAYS ENERGY, LLC;
WHARTON COUNTY GENERATION, LLC;
AND COLETO POWER, LP

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 23, 2014, I electronically filed this motion and the associated Appendix with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification, including counsel for Plaintiffs, Barrington M. Hammond, Jr.


*/s/ Tony L. Visage*
Tony L. Visage