UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Aspire Commodities L.P. and Raiden Commodities L.P., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>GDF SUEZ Energy North America, Inc.; )<br>Ennis Power Company, LLC; Wise County )<br>Power Company, LLC; Midlothian Energy, )<br>LLC; Hays Energy, LLC; Wharton County )<br>Generation, LLC; and Coleto Power, LP, )<br>)<br>Defendants. ) | Case No. 4:14-cv-01111 |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

BRACEWELL & GIULIANI LLP
Stephen B. Crain
Attorney-In-Charge
State Bar No. 04994580
Federal Bar No. 12499
stephen.crain@bgllp.com

Tony L. Visage
State Bar No. 00788587
Federal Bar No. 17248
tony.visage@bgllp.com

Amy E. Parker
State Bar No. 24051156
Federal Bar No. 626178
amy.parker@bgllp.com

J. Erick Sandlin
State Bar No. 24056265
Federal Bar No. 872070
erick.sandlin@bgllp.com

#4685533.5

Leslie D. Wilson
State Bar No. 24084109
Federal Bar No. 1708460
leslie.wilson@bgllp.com

711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
(713) 223-2300 Telephone
(713) 221-1212 Facsimile

COUNSEL FOR DEFENDANTS GDF
SUEZ ENERGY NORTH AMERICA,
INC.; ENNIS POWER COMPANY, LLC;
WISE COUNTY POWER COMPANY,
LLC; MIDLOTHIAN ENERGY, LLC;
HAYS ENERGY, LLC; WHARTON
COUNTY GENERATION, LLC; AND
COLETO POWER, LP

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PLAINTIFFS' RELIANCE ON EXTERNAL EVIDENCE IS IMPROPER | 1 |
| III. | IN FAILING TO RESPOND, PLAINTIFFS HAVE CONCEDED THAT ALL CAUSES OF ACTION BROUGHT BY RAIDEN COMMODITIES, LLP SHOULD BE DISMISSED | 3 |
| IV. | THE FILED RATE DOCTRINE BARS PLAINTIFFS' CLAIM FOR DAMAGES | 3 |
| V. | PLAINTIFFS HAVE FAILED TO ESTABLISH FRAUD, AND THEREFORE CANNOT STATE A CLAIM UNDER SECTION 22(a)(1)(D)(i) | 6 |
| VI. | PLAINTIFFS' FAILURE TO PLEAD SPECIFIC INTENT IS FATAL TO ANY CAUSE OF ACTION UNDER CEA SECTION 22(a)(1)(D)(ii) | 7 |
| VII. | CONCLUSION | 11 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ABC Arbitrage Plaintiffs Group v. Tchuruk,*
    291 F.3d 336 (5th Cir. 2002) ..................................................................................................10

*Hershey v. Energy Transfer Partners, L.P.*,
    610 F.3d 239 (5th Cir. 2010) ....................................................................................................9

*In re Amaranth Nat. Gas Commodities Litig.*,
    587 F. Supp. 2d 513 (S.D.N.Y. 2008)........................................................................................9

*In re Commodity Exch. Inc. Silver Futures and Options Trading Litig.*,
    560 F. App'x 84 (2d Cir. 2014) ...............................................................................................10

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*,
    ---F. Supp. 2d---, Master File No. 9 CR 3690, MDL No. 2013, 2014 WL 4083938, at
    *40 (N.D. Ill. Aug. 18, 2014)..........................................................................................4, 5, 9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    --- F. Supp. 2d ---, No. 11 MD 2262(NRB), 2014 WL 2815645 (S.D.N.Y June 24,
    2014) .......................................................................................................................................10

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
    ---F. Supp. 2d---, No. 13, Civ. 2668 (KBF), 2014 WL 2840152 (S.D.N.Y. June 23,
    2014) .....................................................................................................................................8, 9

*Magee v. Life Ins. Co. of N. Am.*,
    261 F. Supp. 2d 738 (S.D. Tex. 2003) ......................................................................................3

*Mayo v. Halliburton Co.*,
    No. H-10-1951, 2010 WL 4366908 (S.D. Tex. Oct. 26, 2010) ................................................3

*Pechon v. La. Dep't of Health & Hosps.*,
    368 Fed. App'x. 606 (5th Cir. 2010) ........................................................................................2

*Tex. Commercial Energy v. TXU Energy, Inc.*,
    413 F.3d 503 (5th Cir. 2005) ....................................................................................................5

*U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors LLC*,
    554 F. Supp. 2d 523 (S.D.N.Y. 2008)........................................................................................8

*United States v. Brooks*,
    681 F.3d 678 (5th Cir. 2012) ....................................................................................................6

*Walker v. Webco Indus.*,
     562 Fed. App'x 215 (5th Cir. 2014) ........................................................................................2

**RULES**

S.D. Tex. Local Rule 7.4..................................................................................................................3

**REGULATIONS**

Prohibition on the Employment, or Attempted Employment, of Manipulative and
     Deceptive Devices and Prohibition on Price Manipulation, 76 Fed. Reg. 41,398,
     41,407 (July 14, 2011) (codified at 17 C.F.R. pt. 180) ("Final Rule")..................................8, 9

**OTHER AUTHORITIES**

ERCOT Nodal Protocol § 2.1 .........................................................................................................7

ERCOT Nodal Protocol § 4.1(1) .....................................................................................................6

ERCOT Nodal Protocol § 4.1(2) .....................................................................................................6

ERCOT Nodal Protocol § 4.4.9.3(4) ...............................................................................................7

Defendants[1] respectfully submit the following Reply in support of their Motion to Dismiss Plaintiffs' First Amended Complaint. Dkt. No. 15.

## I. INTRODUCTION

1. Plaintiffs' Opposition to Defendants' Motion to Dismiss [Dkt. No. 17] ("Opposition" or "Opp.") recasts the fundamental structure of their case. In their two complaints, Plaintiffs focused exclusively on a nefarious plot in which GDF SUEZ, "through its actions within ERCOT," manipulated prices in the ICE commodity futures market. It is now strikingly clear – and repeatedly acknowledged – that Plaintiffs have absolutely no evidence that GDF SUEZ took any positions on ICE that stood to benefit from the allegedly unjust ERCOT pricing scheme. Confronted with legal obstacles and an utter lack of evidence, Plaintiffs are trying to pivot from the ERCOT-to-ICE theory to instead focus exclusively on (unspecified) "ICE transactions" and market expectations that were hypothetically impacted by GDF SUEZ. Understandably, Plaintiffs are trying to camouflage their case. It will not work. Plaintiffs have pled what they pled, and their claims are legally and factually deficient.

## II. PLAINTIFFS' RELIANCE ON EXTERNAL EVIDENCE IS IMPROPER

2. In their Opposition, Plaintiffs have asked the Court to rely upon factual matters outside of the Complaint. Specifically, Plaintiffs reference (1) a text message conversation that ostensibly took place between "a trader employed by a Suez affiliate" and "a principal from Aspire Commodities," and (2) certain statements made by Stefaan Sercu at a PUCT open meeting relating to the topic of resource adequacy in the ERCOT market. As Plaintiffs are admittedly aware, neither are appropriate for the Court's consideration in connection with the

---

[1] Defendants are (1) GDF SUEZ Energy North America, Inc. ("GSENA") and (2) Ennis Power Company, LLC; Wise County Power Company, LLC; Midlothian Energy, LLC; Hays Energy, LLC; Wharton County Generation, LLC; and Coleto Power, LP (the "Generator Defendants," and collectively with GSENA, "GDF SUEZ" or "Defendants"). All terms not otherwise defined herein shall have the meanings subscribed to them in Defendants' Motion to Dismiss.

pending motion to dismiss. *See Walker v. Webco Indus. Inc.*, 562 Fed. App'x 215, 216 (5th Cir. 2014) (finding that in reaching a decision on a motion to dismiss, courts are not permitted to go outside the complaint and consider external evidence); *Pechon v. La. Dep't of Health & Hosps.*, 368 Fed. App'x 606, 610 (5th Cir. 2010) ("Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint . . . .").

3. If the Court were to consider the extraneous evidence submitted, it would see that the evidence does not support Plaintiffs' claims. Plaintiffs mischaracterize the text conversation, asserting that it contains an admission "that Suez terminated its speculators to avoid liability for its manipulation of ICE prices through its manipulation of LMPs." Opp. at n.1. That position reads an awful lot into a few words. The parties to the "conversation" agree that the proprietary trading desk was "undeservingly laid off," and the decision was "not fair." Opp. at Ex. 1. But nowhere in the texts is there any admission that the proprietary trading desk was engaged in a manipulative scheme to distort prices in the ICE commodity futures market and profit from increased LMPs in ERCOT. To the contrary, the Aspire principal supposes the decision to disband the desk was reached because GDF SUEZ did "**not** want[] to speculate while [placing offers at or near the SWOC in ERCOT]." Opp. at Ex. 1. (emphasis added). ***The texts say exactly the opposite of the conclusion drawn by Plaintiffs!***

4. Plaintiffs also mischaracterize statements made by Stefaan Sercu at certain PUCT meetings, falsely claiming that he "admitt[ed] at a minimum, that Suez knew that its Real Time actions in ERCOT affect prices on forward markets." Opp. at n.1. Mr. Sercu does not say that anywhere in the cited video recordings. To say the very least, Plaintiffs cannot rely on unpled and misrepresented "facts" in response to a motion to dismiss.

**III. IN FAILING TO RESPOND, PLAINTIFFS HAVE CONCEDED THAT ALL CAUSES OF ACTION BROUGHT BY RAIDEN COMMODITIES, LLP SHOULD BE DISMISSED**

5.  Plaintiffs have failed to respond to Defendants' arguments that each of Raiden's claims should be dismissed. Defendants argued that the CEA exemption applies as a bar to each of Raiden's claims because "virtual and convergence bids and offers" are specifically considered to be among the Energy Transactions exempted from the CEA's purview, and Raiden's only trading activity occurred within the ERCOT virtual market. *See* Motion at n.12. Defendants also argued that Raiden failed to establish a sufficient connection to interstate commerce to support a claim under the CEA because all of its damages resulted from transactions in the ERCOT virtual market—a market administered by ERCOT that does not offer futures, swaps, or commodities traded in interstate commerce. *See* Motion at n.21. Plaintiffs' response to Defendants' CEA exemption/no interstate commerce arguments focuses solely on the ICE commodity futures market and never mentions either Raiden or the ERCOT virtual market. *See* Opp. at 14-16. In fact, Raiden is never mentioned in the entirety of Plaintiffs' Opposition. In failing to respond, Plaintiffs cede the validity of Defendants' arguments; all causes of action asserted by Raiden should be dismissed with prejudice. *See e.g.*, *Mayo v. Halliburton Co.*, No. H-10-1951, 2010 WL 4366908, *5 (S.D. Tex. Oct. 26, 2010) (finding plaintiff waived her opposition to certain arguments in defendants' motion to dismiss because she failed to provide a response) (citing *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748, n.10 (S.D. Tex. 2003) ("failure to brief an argument in the district court waives that argument") and S.D. Tex. Local Rule 7.4 ("Failure to respond will be taken as a representation of no opposition.")).

**IV. THE FILED RATE DOCTRINE BARS PLAINTIFFS' CLAIM FOR DAMAGES**

6.  In recognizing a fatal flaw in their stated causes of action, Plaintiffs have sought to avoid application of the filed rate doctrine by now characterizing their case as one centered on

-3-

altered market expectations. Plaintiffs' argument, and their reliance on *In re Dairy Farmers of Am. Inc. Cheese Antitrust Litig.*, is, however, misdirected. In *Dairy Farmers,* defendants were alleged to have manipulated market expectations regarding the pre-settlement value of certain Class III milk futures contracts. The ultimate settlement price of a Class III milk futures contract is determined by the government minimum milk price for a particular month. The price of those contracts *prior to settlement,* however, is determined by market participants' expectations of the price at which the Department of Agriculture will ultimately set the government minimum milk price. *Dairy Farmers*, 767 F. Supp. 2d at 895. The *Dairy Farmers* defendants engaged in a scheme to alter those expectations by acquiring long positions in milk futures and spot cheese contracts, thereby creating a false impression of an increased demand for milk. Defendants profited on the heightened expectations by exiting their positions *prior to settlement*. The ultimate settlement price, i.e., the filed rate actually at issue in *Dairy Farmers*, was not alleged to have been manipulated by the class of plaintiffs claiming damages based on their purchase of Class III milk futures. The court noted that "[p]laintiffs [had] not even state[d] what the actual government minimum milk price was during the relevant period," because it was immaterial to their cause of action. *Id.* The court recognized that "in order for their alleged scheme to succeed, Defendants did not need to actually alter the government minimum milk price," only the market's expectation of where that price would fall. *Id.* Therefore, in assessing damages, the Court was not tasked with determining "what the filed rate would have been absent [d]efendants' actions," but making an "assessment of how much [p]laintiffs' expectations were altered." *Id.* at 896.

7. Plaintiffs attempt to analogize their claims to *Dairy Farmers* by asserting that "[t]he trading prices of ICE contracts are . . . determined by market expectations. Accordingly,

determining Plaintiffs' damages will not require the Court to determine a reasonable ERCOT LMP." Opp. at 12-13. Plaintiffs' Complaint, however, tells a different story. As pled, Plaintiffs' damages are based not on altered expectations, but rather on the "settlement difference" between where the market actually settled, and where it would have settled but for GDF SUEZ's conduct. *See* FAC at ¶¶ 76, 107, 122, 140, 142, 184, 186, 202-3, 207, 244-5, 250. Unlike *Dairy Farmers*, where plaintiffs never mentioned the actual filed rate, Plaintiffs' Complaint is replete with references to the ERCOT LMPs because these filed rates are crucial to the alleged scheme they accuse Defendants of executing. *See e.g.*, FAC at ¶¶ 13, 14, 28, 34-40, 41, 42, 89-90, 132, 137, 199, 255, 257, 264. Plaintiffs accuse Defendants of directly manipulating ERCOT LMPs in a scheme to alter the final settlement price of certain ICE futures contracts. As Plaintiffs explain, "[t]he ultimate settlement price of an ICE contract, [is] a mathematical function of LMPs in ERCOT." Opp. at 3. The LMPs in ERCOT, of course, are a direct result of the price at which the last clearing generator offered in its supply into the market—a price that is a filed rate. *See Tex. Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503 (5th Cir. 2005).

8. Asking the Court to assess damages based upon an allegation that the ultimate settlement price of certain ICE futures contracts was manipulated therefore necessarily requires "an estimation of what the filed rate would have been absent Defendants' actions." *Dairy Farmers*, 767 F. Supp. 2d at 896. Further, to the extent Plaintiffs allege that market expectations were somehow altered by "artificial Real Time LMPs," any assessment of damages would require the Court to opine on what the Real Time LMP (i.e., the filed rate) should have been on

the trading days in question.² Opp. at 4. The filed rate doctrine does not permit the Court to engage in that exercise.

## V. PLAINTIFFS HAVE FAILED TO ESTABLISH FRAUD, AND THEREFORE CANNOT STATE A CLAIM UNDER SECTION 22(a)(1)(D)(i)

9. Plaintiffs' Opposition makes two important concessions with regard to claims brought under Section 22(a)(1)(D)(i).³ Plaintiffs admit that all such claims (1) require an allegation of fraud and (2) must be pled with the particularity required by Rule 9(b). *See* Opp. at 16-17. Plaintiffs attempt to establish fraud by characterizing GDF SUEZ's offers in the Day-Ahead Market as statements of its "expected generation for the next day." Opp. at 3. Plaintiffs do not cite any authority to support their characterization; nevertheless they allege GDF SUEZ's offers in the Day-Ahead Market were "false and/or misleading." Opp. at 5.

10. The ERCOT Nodal Protocols define the Day-Ahead Market as "a daily co-optimized market . . . for . . . forward *financial* energy transactions." ERCOT Nodal Protocols § 4.1(1) (emphasis added). As Plaintiffs admit, participation in the Day-Ahead Market does not create any physical obligation to generate electricity. *See* FAC at ¶ 80. Further, "[p]articipation in the [Day-Ahead Market] is voluntary . . . ." ERCOT Nodal Protocols § 4.1(2). Therefore, there is no obligation for a generator to submit offers into the Day-Ahead Market at all, much less offers that represent a commitment to physically generate a specific quantum of energy the following day.⁴ Indeed, the ERCOT Nodal Protocols specifically permit and anticipate that

---

² Further, the fact that Plaintiffs continue to refer to the ERCOT LMPs as "artificial" directly contradicts their argument that they "are not challenging . . . the LMPs in ERCOT" or asserting that they were "unlawful, wrong or too high." Opp. at 4, 10, 13, 15; FAC at n.18.
³ As explained in Defendants' motion to dismiss, Plaintiffs do not have a viable cause of action under Section 6(c)(1). All private rights of action must be brought under Section 22. *See* Motion at ¶ 25-26.
⁴ Plaintiffs' citation to *United States v. Brooks* for the proposition that "Suez's DAM statements of its expected generation and offer prices were 'reports' as used in Rule 180.1" is both inaccurate and of no consequence. 681 F.3d 678 (5th Cir. 2012); Opp. at 21. *Brooks* considered whether "lengthy documents outlining detailed information about natural gas trades sent to established industry publications" were reports within the meaning of the Rule 180.1. *Id.* at 691. It did not address or even consider whether a generator's offer curve could be considered such a "report."

-6-

generators' offer curves may change in Real Time. ERCOT Nodal Protocols § 4.4.9.3(4) indicates that generators may change their offer curves at any point during "the time between 1800 in the Day-Ahead up to the start of the hour before [the] Operating Hour." ERCOT Nodal Protocols § 2.1 (defining "Adjustment Period"). Any change to GDF SUEZ's offer curves was therefore permissible under the applicable market Protocols. Further, because the ERCOT Protocols specifically contemplate a generator's ability to change its offer curve, any such change cannot render a previously submitted offer curve false, misleading, or fraudulent.

11. Plaintiffs' contention that Defendants' use of the "EMR" and "OFF" designations was somehow "inappropriate" is both unsupported and insufficient to establish fraud. Plaintiffs wrongly argue that the EMR and OFF designations "will remove [a] unit from ERCOT's generation and reliability considerations." Opp. at 7. Their own Complaint, however, cites to the section of the ERCOT Nodal Protocols that specifies the conditions under which such units are, in fact, "available for commitment." *See* Opp. at 3; FAC at ¶ 158. They further argue that the EMR and OFF designations were "intended" only for certain facilities. *See* Opp. at 3. The cited section of the ERCOT Business Practice Manual, however, merely sets forth "examples" of facilities which may use those designations. *See* FAC at ¶ 161. Finally, Plaintiffs' contention that there was "no physical reason" or "stand-alone economic reason" for GDF SUEZ to use those designations is pure speculation. Opp. at 8.

12. Plaintiffs have failed to establish that any of GDF SUEZ's conduct was fraudulent and therefore cannot state a cause of action under Section 22(a)(1)(D)(i).

## VI. PLAINTIFFS' FAILURE TO PLEAD SPECIFIC INTENT IS FATAL TO ANY CAUSE OF ACTION UNDER CEA SECTION 22(a)(1)(D)(ii)

13. Plaintiffs' Opposition contains a lengthy recitation of case law supporting their assertion that "legitimate transactions [can] constitute market manipulation under the CEA."

Opp. at 11.  In the absence of fraud, however, all such claims must be brought under Section 22(a)(1)(D)(ii) as Plaintiffs know.  Opp. at 17; *see also U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors LLC*, 554 F. Supp. 2d 523, 534 (S.D.N.Y. 2008) (recognizing that "the CEA has a separate anti-fraud and anti-manipulation provision," and "[w]hen the statute distinguishes fraud and manipulation by addressing them in different provisions, it would be redundant to construe manipulation to require a fraud element").  Plaintiffs also admit that "[i]t is the intent for those legal acts to manipulate commodities markets that makes them illegal under the CEA."  Opp. at 10.  Indeed each of the cited cases turn on the question of specific intent, an element Plaintiffs have simply failed to plead.

14.     As Plaintiffs recognize, in order to state a cause of action under Section 22(a)(1)(D)(ii), they must plead specific intent.  Opp. at 26 (citing Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation, 76 Fed. Reg. 41,398, 41,407 (July 14, 2011) (codified at 17 C.F.R. pt. 180) ("Final Rule")).  Plaintiffs, however, incorrectly assert that a showing of recklessness will suffice to establish specific intent under this Section of the CEA.  Opp. at 30.  This assertion is wrong.  Plaintiffs' cited authority for this statement is a recent securities opinion setting forth the proper standard for pleading specific intent under Section 10(b) of the Securities Exchange Act pursuant to the Private Securities Litigation Reform Act.  *See In re Magnum Hunter Res. Corp. Sec. Litig.*, ---F. Supp. 2d---, No. 13 Civ. 2668 (KBF), 2014 WL 2840152, at *9 (S.D.N.Y. June 23, 2014).  The case has no bearing on the proper standard to state a claim under Section 22(a)(1)(D)(ii) of the CEA.  The CFTC squarely addressed this issue in its Final Rule:

> The Commission reaffirms the requirement under final Rule 180.2 that a person must act with the requisite specific intent.  In other words, **recklessness will not**

> **suffice** under final Rule 180.2 as it will under final Rule 180.1. The Commission finds this level of intent necessary to ensure that legitimate conduct is not captured by final Rule 180.2, which covers non-fraud based manipulation.

76 Fed. Reg. at 41,407 (emphasis added).

15. Regardless, Plaintiffs' allegations are insufficient to establish specific intent under either standard. Plaintiffs continue to try to equate knowledge with intent. *See e.g.*, Opp. at 31 ("Plaintiffs have also alleged that Suez knew that its inappropriate actions in ERCOT would drive up prices on ICE.") Plaintiffs ignore the substantial body of case law confirming that "[m]ere knowledge that certain actions might have an impact on the futures market is not sufficient to state a private claim under the CEA." *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, ---F. Supp. 2d---, Master File No. 9 CR 3690, MDL No. 2013, 2014 WL 4083938, at *40 (N.D. Ill. Aug. 18, 2014) (citing *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 249 (5th Cir. 2010) ("Under a specific intent standard, mere knowledge is not enough. Defendants must have specifically intended to impact the futures market.")).

16. While Plaintiffs contend that GDF SUEZ's conduct provided it with "the concrete opportunity . . . for significant profit" in the ICE market, the law requires the identification of "both the motive **and** [the] opportunity to commit fraud" to plead specific intent. Opp. at 30 (citing *Magnum Hunter*, 2014 WL 2840152, at *9) (emphasis added). Pleading motive requires proof of "a concrete and personal benefit to the individual defendants resulting from the [alleged] fraud." *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 530 (S.D.N.Y. 2008). Plaintiffs have wholly failed to meet this standard. While they speculate as to the existence of "Suez's long positions on ICE," Plaintiffs fail to plead any facts to suggest that GDF SUEZ maintained "any position on the ICE futures market that stood to benefit from increased real-time prices in the ERCOT physical market on the specific trading days in question." Motion at ¶ 44. Further, as Defendants have already established, the allegation that "Suez traded on ICE," is

insufficient to suggest Defendants possessed a motive to manipulate the market. *See* Opp. at 31, Motion at ¶ 47 (citing, *inter alia*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, --- F. Supp. 2d ---, No. 11 MD 2262 (NRB), 2014 WL 2815645, at *11 (S.D.N.Y. June 23, 2014). Plaintiffs also continue to complain that GDF SUEZ's conduct "did not make economic sense," ignoring both their own Complaint's articulation of the precise economic motivation underlying GDF SUEZ's conduct and well-settled case law confirming that "vague allegations of purportedly 'uneconomic conduct' . . . [cannot] support an inference of intent." *See* FAC at ¶¶ 131, 139; Opp. at 31; Motion at ¶ 45 (citing *In re Commodity Exch. Inc. Silver Futures and Options Trading Litig.*, 560 F. App'x 84, 86-87 (2d Cir. 2014)).

17.     In their best attempt to establish motive and opportunity, Plaintiffs again resort to unreliable and uncorroborated accounts from anonymous witnesses. Plaintiffs correctly cite cases confirming that anonymous witnesses need not be named in the Complaint, "so long as they are identified . . . with sufficient particularity to support the probability that a person in the position occupied by the source as described would possess the information pleaded." Opp. at 32 (citing *ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336, 353 (5th Cir. 2002)). But Plaintiffs make no attempt to describe their confidential sources with any particularity whatsoever. The only detail provided is that the source was "a person present at Suez's commodities trading desk during the relevant time frame." Opp. at 6-7. The description did not appear in Plaintiffs' Complaint and, even if it had, is insufficient to lend any hint of credibility to their allegation.[5]

---

[5] Plaintiffs' request for leave to amend their Complaint to include further detail regarding the source of the statements purportedly made by Mr. Sercu should be denied. *See* Opp. at n.14. Plaintiffs have demonstrated their knowledge of the law regarding the particularity with which an anonymous source must be described. Having made no attempt to do so in either the Original Complaint or the First Amended Complaint, Plaintiffs' request for a further opportunity to amend should be denied.

## VII. CONCLUSION

18. Defendants respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice and grant all other relief to which Defendants are entitled.

DATED: September 22, 2014.

                          Respectfully submitted,

                          By: */s/ Stephen B. Crain*
                              Stephen B. Crain
                              Attorney-In-Charge
                              State Bar No. 04994580
                              Federal Bar No. 12499
                              Tony L. Visage
                              State Bar No. 00788587
                              Federal Bar No. 17248
                              Amy E. Parker
                              State Bar No. 24051156
                              Federal Bar No. 626178
                              J. Erick Sandlin
                              State Bar No. 24056265
                              Federal Bar No. 872070
                              Leslie D. Wilson
                              State Bar No. 24084109
                              Federal Bar No. 1708460

                              711 Louisiana Street, Suite 2300
                              Houston, Texas 77002-2781
                              (713) 223-2300 Telephone
                              (713) 221-1212 Facsimile
                              stephen.crain@bgllp.com
                              tony.visage@bgllp.com
                              amy.parker@bgllp.com
                              erick.sandlin@bgllp.com
                              leslie.wilson@bgllp.com

                              COUNSEL FOR DEFENDANTS GDF SUEZ ENERGY NORTH AMERICA, INC.; ENNIS POWER COMPANY, LLC; WISE COUNTY POWER COMPANY, LLC; MIDLOTHIAN ENERGY, LLC; HAYS ENERGY, LLC; WHARTON COUNTY GENERATION, LLC; AND COLETO POWER, LP

-12-

## CERTIFICATE OF SERVICE

    I certify that on September 22, 2014, I electronically filed this reply as Exhibit 1 to Defendants' Motion for Leave to file Reply in Support of Their Motion to Dismiss Plaintiffs' First Amended Complaint with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification, including counsel for Plaintiffs, Barrington M. Hammond, Jr.

                              */s/ Stephen B. Crain*
                              Stephen B. Crain