# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———

No. 15-20125

———

United States Court of Appeals
Fifth Circuit

**FILED**

February 25, 2016

Lyle W. Cayce
Clerk

ASPIRE COMMODITIES, L.P.; RAIDEN COMMODITIES, L.P.,

Plaintiffs – Appellants

v.

GDF SUEZ ENERGY NORTH AMERICA, INCORPORATED; ENNIS POWER COMPANY, L.L.C.; WISE COUNTY POWER COMPANY, L.L.C.; MIDLOTHIAN ENERGY, L.L.C.; HAYS ENERGY, L.L.C.; WHARTON COUNTY GENERATION, L.L.C.; COLETO POWER, L.P.,

Defendants – Appellees

———

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-1111

———

Before HIGGINBOTHAM, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Aspire Commodities, L.P., and Raiden Commodities, L.P., sued GDF Suez Energy North America, Inc. and its subsidiaries for violating anti-manipulation provisions of the Commodity Exchange Act. GDF Suez moved to dismiss because the Commodity Futures Trading Commission had issued an order exempting the relevant Texas electricity market from provisions of the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Commodity Exchange Act. The district court granted the motion. We AFFIRM.

## FACTS AND PROCEDURAL BACKGROUND

The defendants, GDF Suez Energy North America, Inc., and its subsidiaries, produce electricity in the Texas electricity market. The Electric Reliability Council of Texas ("ERCOT") oversees a Texas electricity grid in which GDF Suez participates. ERCOT has two markets for energy sales: the Real-Time Market and the Day-Ahead Market.

In the Real-Time Market, GDF Suez and other energy producers submit "offer curves" periodically throughout the day to ERCOT. "Offer curves" are offers for a certain quantity of electricity at a certain price. ERCOT then compares the offer curves to the Locational Marginal Price ("LMP"), a market price that ERCOT constantly adjusts to balance supply and demand at various nodes on the grid. ERCOT "dispatches" to consumers the electricity that is offered below the LMP, starting with the lowest-cost electricity.

The Day-Ahead Market is a forward market where producers like GDF Suez sell commitments to deliver electricity at certain prices to consumers the next day, reducing exposure to price volatility for both sides. Producers must provide the promised energy the next day themselves or purchase it on the Real-Time Market to cover their commitment. When the markets are operating properly, the Day-Ahead Market should approximate what the prices will be on the Real-Time Market the next day.

The plaintiffs Aspire Commodities, L.P., and Raiden Commodities, L.P., participate in derivatives markets that rely on activity in the Day-Ahead and Real-Time Markets. Raiden participates in ERCOT's "virtual" market, where traders speculate on the divergence between the Day-Ahead and Real-Time Market prices. Aspire buys and sells electricity futures contracts on the

Intercontinental Exchange ("ICE"), and the prices of electricity futures contracts correlate with the LMP from the ERCOT grid. Importantly, GDF Suez also trades on ICE.

Aspire and Raiden (collectively "Aspire") brought a private action under the Commodity Exchange Act ("CEA") against GDF Suez and its subsidiaries because of GDF Suez's activities in ERCOT's markets. *See* 7 U.S.C. § 25. Aspire alleged that GDF Suez manipulates the LMP on the ERCOT grid to profit on its trades on ICE. This alleged conduct violates the anti-manipulation provisions of the CEA. *See* 7 U.S.C. § 9(1), (3). Aspire claimed it lost money in the derivatives markets because of GDF Suez's alleged price manipulation.

According to Aspire's complaint, GDF Suez accomplished this scheme by creating artificial scarcity. It dramatically increased the prices of its offer curves far above the LMP to make its electricity unavailable for purchase, termed "economic withholding." It also reported that its plants were offline and therefore unable to produce electricity. Additionally, Aspire alleged that the dramatically increased prices that GDF Suez demanded far exceeded the prices it had offered in the previous day's Day-Ahead Market, making GDF Suez's economic withholding difficult to predict and likely intentional.

Aspire alleged that GDF Suez's behavior has no rational economic or physical explanation, other than manipulating LMPs and prices on derivatives markets. For example, when GDF Suez withheld supply, it could not deliver on its previous day's Day-Ahead Market commitments. It then had to buy energy at the higher prices it allegedly inflated on the Real-Time Market to meet its commitments, causing itself financial losses. Aspire alleged GDF Suez would not behave this way unless it "stood to gain more than [its losses] through some other means, such as by trading on ICE" or the ERCOT virtual market.

GDF Suez moved to dismiss Aspire's complaint under Federal Rule of Civil Procedure 12(b)(6). GDF Suez primarily argued that a Final Order from the Commodity Futures Trading Commission barred Aspire's private lawsuit. In the Final Order, the Commission exercised its statutory authority to exempt ERCOT transactions from the CEA except certain enumerated provisions. The district court held that the Final Order barred Aspire's lawsuit because 7 U.S.C. § 25, which authorized Aspire's private lawsuit, was not one of the enumerated CEA provisions still applicable to ERCOT transactions. Aspire timely appealed.

## DISCUSSION

We review a district court's dismissal under Rule 12(b)(6) *de novo*. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). We accept "all well-pleaded facts as true and [view] those facts in the light most favorable to" Aspire. *Id.* "[A] complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A claim is plausible if the court can "draw a reasonable inference that the defendant is liable for" misconduct from the factual content alleged. *Id.*

To determine whether Aspire has met this standard, we begin with the Final Order. Even taking Aspire's allegations as true, Aspire has failed to state a plausible claim if the Final Order exempts GDF Suez's ERCOT transactions from the reach of the CEA provisions that Aspire relies on. Aspire claims that GDF Suez has violated 7 U.S.C. § 9(1) and (3), which prohibit manipulation in connection with a commodities contract and manipulation of the price of a commodity. *See* 7 U.S.C. § 9(1), (3). A private cause of action for violations of those provisions is granted by 7 U.S.C. § 25(a)(1)(D).

The Commission has authority to "exempt any agreement, contract, or transaction (or class thereof)" from regulation under the CEA if the exemption serves the public interest and meets other statutory requirements. *See* 7 U.S.C. § 6(c)(1), (c)(2), (c)(6). ERCOT and other regulatory entities petitioned for an exemption from the CEA for transactions occurring in their markets. The Commission received public comments on a proposed draft order.

On April 2, 2013, the Commission entered a Final Order exempting agreements, contracts, and transactions on the ERCOT market "from all provisions of the CEA," except certain enumerated provisions. Final Order in Response to a Petition from Certain Independent System Operators, 78 Fed. Reg. 19,880, 19,912 (Apr. 2, 2013). The provision that authorizes Aspire's private right of action, 7 U.S.C. § 25, is not included in the listed exceptions. The Final Order applies to "energy transactions," which are transactions in a "'Day-Ahead Market' or 'Real-Time Market,' . . . for the purchase or sale of a specified quantity of electric energy at a specified location (including virtual and convergence bids and offers)." *Id.* at 19,912–13. The transactions also must be "offered or sold" in accordance with a tariff, rate schedule, or protocol approved by ERCOT or its regulator, the Public Utility Commission of Texas. *Id.* at 19,913–14.

The Final Order clearly subjects these ERCOT transactions to the anti-manipulation provision that Aspire alleges GDF Suez has violated because that provision was in the enumerated list of exceptions. *See* 7 U.S.C. § 9(1), (3). In the Final Order, the Commission has expressly retained authority to enforce this anti-manipulation section. Nonetheless, as the district court noted, ERCOT transactions are exempted from a private right of action under 7 U.S.C. § 25 because that provision is not a listed exception. Aspire makes several arguments on appeal as to why the Final Order does not prevent its private right of action. We address each.

First, Aspire primarily argues that, despite its text, the Final Order does not exempt ERCOT transactions from the CEA's private right of action provision. Aspire finds support for this argument in a Proposed Order from the Commission potentially exempting a different applicant, the Southwest Power Pool, from certain CEA provisions (the "SPP Proposed Order"). In the SPP Proposed Order, the Commission included a preamble expressing its interpretation of the Final Order in this case and concluding that the Final Order does not prevent private causes of action for fraud and manipulation under the CEA, even though 7 U.S.C. § 25 is not included in the enumerated list of still-applicable provisions. Aspire contends that the Commission's interpretation of the Final Order, as presented in the SPP Proposed Order, is controlling and would allow its private lawsuit to go forward.

As a preliminary matter, we review Aspire's arguments about the Final Order before the district court. Aspire argued that the Final Order did not preclude its private right of action because its lawsuit was based on GDF Suez's activity in manipulating prices on ICE, which is not an ERCOT market and therefore beyond the scope of the Final Order. Aspire also contended that interpreting the Final Order narrowly, as not extending to its claim about manipulation in the ICE market, best served the CEA's purposes. In essence, Aspire conceded that the Final Order exempts ERCOT transactions from the private right of action provision of the CEA, but argued that the Final Order did not reach this lawsuit based on manipulation occurring in the ICE market.

Aspire's argument on appeal is the opposite. Aspire now claims that under a proper interpretation of the Final Order, guided by the SPP Proposed Order, the private right of action provision still applies to ERCOT transactions. We do not consider arguments or legal theories that were not presented to the district court because "the trial court cannot have erred as to matters which were not presented to it." *Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d

1497, 1501 n.5 (5th Cir. 1989). Such arguments are waived, absent extraordinary circumstances not present here. *See French v. Allstate Indem. Co.*, 637 F.3d 571, 582–83 (5th Cir. 2011). We recognize that the Commission issued the SPP Proposed Order after the district court decided this case, so Aspire could not have used the Order as support before the district court. Nonetheless, Aspire could have made the interpretive argument it makes now: that the Final Order should not be read to exempt ERCOT transactions from the private right of action provision even though that provision is not an enumerated exception.

Even if we were to address the merits of Aspire's interpretive argument, the SPP Proposed Order does not change our analysis. We do not find the Final Order ambiguous. Accordingly, we only consider the Commission's interpretation of the Final Order as expressed in the SPP Proposed Order's preamble for its "persuasive power." *See Belt v. EmCare, Inc.*, 444 F.3d 403, 408 (5th Cir. 2006). We do not find the Commission's statements in the preamble of the SPP Proposed Order persuasive as they directly contradict the plain language of the Final Order.

Aspire also re-urges on appeal the argument it presented to the district court. Aspire claims that the Final Order cannot exempt manipulation occurring on the ICE market from private lawsuits because the Final Order only exempts ERCOT transactions. The district court reasoned that Aspire's entire lawsuit was solely founded on allegedly improper conduct by GDF Suez that occurred on ERCOT markets. Accordingly, the Final Order applied to GDF Suez's activities. We agree. While Aspire complains that the effects of GDF Suez's manipulation occurred in the ICE market, all of GDF Suez's allegedly improper activity occurred in the ERCOT market.

Finally, Aspire contends the Final Order does not exempt GDF Suez's alleged activity on the ERCOT market because GDF Suez's withholding

behavior was not within the scope of the Final Order. The Final Order protects "the execution of energy-related agreements, contracts, and transactions." 78 Fed. Reg. at 19,912. In Aspire's view, "GDF manipulated market expectations by withholding its energy – that is, by *not* entering transactions and *not* generating electricity," thereby removing the conduct from the Final Order's scope. Aspire failed to raise this argument before the district court, so we need not address it. *See French*, 637 F.3d at 582–83; *Reetz*, 888 F.2d at 1501 n.5.

Congress has given the Commission the authority to create exemptions such as the Final Order in this case. *See* 7 U.S.C. § 6(c). We determine that the Final Order precludes Aspire's lawsuit because it exempts ERCOT transactions from 7 U.S.C. § 25, and GDF Suez's activities were within the scope of the Final Order. Accordingly, Aspire has failed to allege facts that allow "a reasonable inference that the defendant is liable for the misconduct." *Iqbal*, 556 U.S. at 678. Because the Final Order resolves this case, we do not reach the parties' other arguments.

AFFIRMED.